1  Emily Reitmeier (SBN 305512)
   SKADDEN, ARPS, SLATE, MEAGHER &
2  FLOM LLP
   525 University Avenue, Suite 1400
3  Palo Alto, CA 94301
   Telephone: (650) 470-4500
4  Facsimile: (650) 470-4570
   emily.reitmeier@skadden.com
5
   Jessica Davidson Miller (*Pro Hac Vice*)
6  SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM LLP
7  1440 New York Avenue N.W.
   Washington, DC 20005
8  Telephone: (202) 371-7000
   Facsimile: (202) 393-5760
9  jessica.miller@skadden.com
   *Attorneys for Defendant*
10

11              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
12                     SAN JOSE DIVISION

13  JEFFREY CIMOLI, on behalf of himself        CASE NO. 5:20-cv-07838-BLF
    and all others
14  similarly situated,                         **DEFENDANT ALACER CORP.'S NOTICE
                                                OF MOTION AND MOTION TO DISMISS
15                   Plaintiff,                 OR IN THE ALTERNATIVE PARTIALLY
                                                STRIKE CLASS CLAIMS;
16  v.                                          MEMORANDUM OF POINTS AND
                                                AUTHORITIES IN SUPPORT OF
17  ALACER CORP.,                               MOTION TO DISMISS OR IN THE
                                                ALTERNATIVE PARTIALLY STRIKE
18                   Defendant.                 CLASS CLAIMS**

19                                              Date: June 3, 2021
                                                Time: 9:00 am
20                                              Courtroom: 3, 5th Floor
                                                Judge: Beth Labson Freeman
21
22                                              Action Filed: November 5, 2020

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO: THE ABOVE-CAPTIONED COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 3, 2021, at 9:00 a.m., before Judge Beth Labson Freeman, in Courtroom 3, located on the 5th Floor of the Federal Building, 280 S. 1st Street, San Jose, CA, defendant Alacer Corp. ("defendant" or "Alacer") will move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f), to dismiss plaintiff's claims in full or in the alternative to partially strike plaintiff's class allegations.

Defendant's Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Zachary Martin, the pleadings and papers on file in this action, and such further argument and matters as may be presented at the time of the hearing on this Motion.

1
2
**<u>TABLE OF CONTENTS</u>**
3
<u>Page</u>

4
INTRODUCTION ........................................................................................................1
5
STATEMENT OF ISSUES TO BE DECIDED ........................................................2
6
BACKGROUND ........................................................................................................2
7
ARGUMENT ..............................................................................................................3
8      I.      PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO
               STATE A CLAIM. ..................................................................................3
9
10             A.      Plaintiff's Claims Are Governed By California Law. ..................4
11             B.      Plaintiff's FAL, CLRA, UCL And Common Law Fraud Claims
                       Should Be Dismissed. ..................................................................6
12             C.      Plaintiff's Warranty Claims Should Be Dismissed For Two Reasons. .....10
13                     1.      Plaintiff Cannot Show That Defendant Breached A Promise........10
14                     2.      Plaintiff's Implied Warranty Claim Separately Fails Because
                               He Does Not Allege Privity. ..............................................11
15             D.      Plaintiff's Unjust Enrichment Claim Should Be Dismissed. ....................12
16
       II.     PLAINTIFF CANNOT ASSERT A CLAIM UNDER THE UTPCPL.................12
17
       III.    PLAINTIFF LACKS STANDING TO ASSERT A CLAIM FOR
18             INJUNCTIVE RELIEF........................................................................12
19     IV.     THE COURT SHOULD ALTERNATIVELY STRIKE PLAINTIFF'S
               CLASS ALLEGATIONS IN PART.....................................................14
20
CONCLUSION..........................................................................................................17
21
22
23
24
25
26
27
28

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**FEDERAL CASES**

*In re Actimmune Marketing Litigation*,
No. C 08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009)..............................7, 10, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................3

*Babaian v. Dunkin' Brands Group, Inc.*,
No LACV 17-4890-VAP (MRWx), 2018 U.S. Dist. LEXIS 98673
(C.D. Cal. June 12, 2018) ...................................................................................................13

*Becarra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ............................................................................................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................3

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) ..............................................................................................7

*Bobo v. Optimum Nutrition, Inc.*,
No. 14CV2408 BEN (KSC), 2015 U.S. Dist. LEXIS 187233 (S.D. Cal. Sept. 11, 2015) ...........9

*Broomfield v. Craft Brew Alliance, Inc.*,
No. 17-cv-01027-BLF, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) ..................................9, 11

*Brown v. Starbucks Corp.*,
No. 18cv2286 JM (WVG), 2019 WL 996399 (S.D. Cal. Mar. 1, 2019) ...............................6

*Bush v. Mondelez International, Inc.*,
No. 16-cv-02460-RS, 2016 U.S. Dist. LEXIS 140013 (N.D. Cal. Oct. 7, 2016) ........................8

*Carpenter v. Petsmart, Inc.*,
441 F. Supp. 3d 1028 (S.D. Cal. 2020)...............................................................................15, 16

*Cheslow v. Ghirardelli Chocolate Co.*,
--- F. Supp. 3d ----, 2020 WL 6342929 (N.D. Cal. Oct. 29, 2020).............................................9

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)..............................................................................................................13

*Cordes v. Boulder Brands USA, Inc.*,
No. CV 18-6534 PSG (JCx), 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018).....................13, 14

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ..............................................................................................14

*Dinan v. SanDisk LLC*,
No. 18-cv-05420-BLF, 2019 WL 2327923 (N.D. Cal. May 31, 2019) .......................................8

*Dysthe v. Basic Research LLC*,
  No. CV 09-8013 AG (SSx), 2011 WL 5868307 (C.D. Cal. June 13, 2011)...............................16

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir 2016) .................................................................................6, 7, 9

*Granfield v. NVIDIA Corp.*,
  No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ...........................13

*Gustavson v. Wrigley Sales Co.*,
  961 F. Supp. 2d 1100 (N.D. Cal. 2013) ...................................................................2

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) .............................................................10, 11

*Hawyuan Yu v. Dr Pepper Snapple Group, Inc.*,
  No. 18-cv-06664-BLF, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020).........................13

*Holt v. Foodstate, Inc.*,
  No. 15cv78 L (JMA), 2015 WL 9592534 (S.D. Cal. Dec. 31, 2015)...........................16

*Klaxon Co. v. Stentor Electric Manufacturing Co.*,
  313 U.S. 487 (1941) ..............................................................................................5

*Leonhart v. Nature's Path Foods, Inc.*,
  No. 5:13-CV-0492-EJD, 2014 WL 1338161 (N.D. Cal. Mar. 31, 2014) ...................16

*Leonhart v. Nature's Path Foods, Inc.*,
  No. 13-cv-00492-BLF, 2014 WL 6657809 (N.D. Cal. Nov. 21, 2014) .....................16

*Lewis v. Casey*,
  518 U.S. 343 (1996)..............................................................................................13

*Loomis v. Slendertone Distribution, Inc.*,
  420 F. Supp. 3d 1046 (S.D. Cal. 2019)..................................................................12

*Matic v. United States Nutrition, Inc.*,
  No. CV 18-9592 PSG (AFMx), 2019 WL 3084335 (C.D. Cal. Mar. 27, 2019) ......14

*Mazza v. American Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .........................................................................4, 5, 6

*McKinnis v. Kellogg USA*,
  No. CV 07-2611 ABC (RCx), 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ..........6

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ..................................................................12

*Pardini v. Unilever United States, Inc.*,
  961 F. Supp. 2d 1048 (N.D. Cal. 2013) .............................................................4, 13

*Punian v. Gillette Co.*,
  No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016)............6, 10, 12

*Romero v. Flowers Bakeries, LLC*,
  No. 14-cv-05189-BLF, 2016 U.S. Dist. LEXIS 15868 (N.D. Cal. Feb. 8, 2016) .......................7

*Shanks v. Jarrow Formulas, Inc.*,
  No. LA CV 18-09437 PA (AFMx), 2019 U.S. Dist. LEXIS 227427
  (C.D. Cal. Dec. 27, 2019) ........................................................................................................ 14

*Smith v. Intuit Inc.*,
  No. 5:12-cv-00222 EJD, 2012 WL 3945485 (N.D. Cal. Sept. 10, 2012) ................................... 8

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................................................. 13

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) .................................................................................................. 15

*Stewart v. Electrolux Home Produdcts, Inc.*,
  304 F. Supp. 3d 894 (E.D. Cal. 2018) ...................................................................................... 12

*Sugawara v. Pepsico, Inc.*,
  No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115 (E.D. Cal. May 21, 2009) .......................... 6

*Towers v. Iger*,
  No. 15-cv-04609-BLF, 2017 WL 6044035 (N.D. Cal. Mar. 10, 2017) ....................................... 8

*United States ex rel. Cafasso v. Gen. Dynamics C4 Systems, Inc.*,
  637 F.3d 1047 (9th Cir. 2011) .................................................................................................... 4

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008) .................................................................................................... 10

*Workman v. Plum Inc.*,
  141 F. Supp. 3d 1032 (N.D. Cal. 2015) ..................................................................................... 9

*Zinser v. Accufix Research Institute, Inc.*,
  253 F.3d 1180 (9th Cir. 2001) .................................................................................................... 5

**STATE CASES**

*Burr v. Sherwin Williams Co.*,
  268 P.2d 1041 (Cal. 1954) ....................................................................................................... 12

*Debbs v. Chrysler Corp.*,
  810 A.2d 137 (Pa. Super. Ct. 2002) ........................................................................................... 4

*In re Google Inc. Shareholder Derivative Litigation*,
  No. 14-CV-261485, 2015 WL 9942165 (Cal. Super. Ct. Nov. 24, 2015) ................................... 8

*Hernandez v. Burger*,
  162 Cal. Rptr. 564 (Ct. App. 1980) ............................................................................................ 6

*Hughes v. Beard*,
  No. 594 M.D. 2009, 2010 WL 9519102 (Pa. Commw. Ct. Oct. 6, 2010) ................................... 5

*Lavie v. Procter & Gamble Co.*,
   129 Cal. Rptr. 2d 486 (Ct. App. 2003) ...................................................................... 7

*McCann v. Foster Wheeler LLC*,
   225 P.3d 516 (Cal. 2010) ............................................................................... 4, 5, 6

*McKell v. Washington Mutual, Inc.*,
   49 Cal. Rptr. 3d 227 (Ct. App. 2006) ..................................................................... 10

*Richard v. Ameriprise Financial, Inc.*,
   152 A.3d 1027 (Pa. Super. Ct. 2016) ........................................................................ 5

*Shaeffer v. Califa Farms, LLC*,
   258 Cal. Rptr. 3d 270 (Ct. App. 2020) ................................................................... 10

*Skylor v. Nordic Naturals, Inc.*,
   No. CGC-17-562382, 2018 Cal. Super. LEXIS 2414 (Mar. 8, 2016) ......................... 8

## STATE STATUTES

Cal. Com. Code § 2314(2)(f) .................................................................................. 11

73 Pa. Stat. and Cons. Stat. § 201-9.2(a) ................................................................. 5

## FEDERAL RULES

Fed. R. Civ. P. 12(f) ............................................................................................... 15

Fed. R. Civ. P. 23(d)(1)(D) ..................................................................................... 15

**INTRODUCTION**

Every shopper knows that packages of food or vitamins found at the grocery store contain a prominent label, entitled "Nutrition Facts" or "Supplement Facts," that lists, in table format, the product's serving size and the amount of calories, sugars, vitamins and minerals contained in each serving. Nonetheless, plaintiff Jeffrey Cimoli alleges that he was deceived about the serving size of Emergen-C Immune Support Gummies ("Immune Support Gummies") because he chose not to read that portion of the packaging. According to plaintiff, he subjectively assumed that all 750 mg of Vitamin C promised on the label would be included in a single gummy – even though that claim appears nowhere on the package, and even though the very first statement in the Supplement Facts label is: "Serving Size 3 Gummies."

As set forth below, Mr. Cimoli's claims should be dismissed for several reasons.

*First*, plaintiff does not allege a deceptive act, an essential element of all of his causes of action, because there is no statement on the packaging for Immune Support Gummies that is false or likely to mislead a reasonable consumer. Nowhere does the packaging remotely suggest that each individual gummy contains 750 mg of Vitamin C. And the Supplement Facts label on the bottle expressly and unequivocally states that each serving consists of three gummies.

*Second*, plaintiff's claim for breach of implied warranty separately fails because he does not and cannot allege privity.

*Third*, plaintiff cannot state a cause of action under Pennsylvania law because his claims are governed by the law of California, the state where he allegedly purchased Immune Support Gummies – not the state of Pennsylvania, which has no meaningful connection to his claims.

*Fourth*, plaintiff lacks standing to assert claims for injunctive relief because he now knows the serving size of Emergen-C Gummies; thus, even if plaintiff could plausibly allege that the label is deceptive (and he cannot), he still would not be able to plausibly allege that *he* will be deceived by it in the future.

*Finally*, in the event that plaintiff's claims are not dismissed in full, plaintiff's class allegations should be partially stricken in two respects: (1) the nationwide class allegations should be stricken since the sole basis for the nationwide class is the Pennsylvania cause of action that

Motion to Dismiss or in the Alternative Partially Strike Class Claims - 5:20-cv-07838-BLF

1   plaintiff has no standing to assert; and (2) the Court should limit any proposed class to purchasers

2   of Immune Support Gummies, since Mr. Cimoli never purchased Elderberry Immune+ Immune

3   Support Gummies ("Elderberry Gummies").

## STATEMENT OF ISSUES TO BE DECIDED

5       Whether plaintiff has stated a cause of action for any of his claims under California law,

6   whether plaintiff can assert claims under Pennsylvania law, and whether plaintiff's class

7   allegations should be partially stricken.

## BACKGROUND

9       Plaintiff Jeffrey Cimoli, a citizen and resident of California, alleges that in June 2020, he

10  purchased a bottle of Emergen-C Immune Support Gummies in the "Orange, Tangerine, and

11  Raspberry" flavor at a local Target.  (Compl. ¶ 16.)  The gummies were sold in a bottle that stated

12  "750 mg Vitamin C" and included the following "Supplement Facts" table:[1]

| **Supplement Facts** | | |
|---|---|---|
| Serving Size 3 Gummies | | |
| **Amount Per Serving** | | **% Daily Value** |
| Calories | 45 | |
| Total Carbohydrate | 11 g | 4%[†] |
| Total Sugars | 7 g | * |
| Includes 7 g Added Sugars | | 14%[†] |
| Vitamin C (as ascorbic acid) | 750 mg | 833% |
| Vitamin B$_6$ (as pyridoxine hydrochloride) | 1.5 mg | 88% |
| Vitamin B$_{12}$ (as cyanocobalamin) | 4 mcg | 167% |
| Biotin | 36 mcg | 120% |
| Zinc (as zinc sulfate) | 1.5 mg | 14% |
| Manganese (as manganese gluconate) | 0.38 mg | 17% |
| Sodium | 35 mg | 2% |
| [†] Percent Daily Values are based on a 2,000 calorie diet. * Daily Value not established. | | |

21  In addition, the product packaging contains explicit instructions, which state:  **Directions:** . . .

22  Take three (3) gummies daily."

23      Plaintiff nonetheless alleges that because he looked at only one side of the bottle, he

---

25      [1]     More complete photographs of the front and back of the packages of Immune

26  Support Gummies are attached to the Declaration of Zachary Martin.  The Court can consider these

27  photos, although they are not attached to the pleadings, without converting this motion into one for

28  summary judgment.  *See, e.g.*, *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1

(N.D. Cal. 2013).

1   interpreted the packaging to mean that each individual gummy contained 750 mg of Vitamin C.

2   Based on these allegations, plaintiff asserts claims for:  violation of the California Unfair

3   Competition Law ("UCL"), the Consumers Legal Remedies Act ("CLRA") and the False

4   Advertising Law ("FAL"); breach of express and implied warranties; unjust enrichment; common

5   law fraud; and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law

6   ("UTPCPL").  Plaintiff seeks to represent a nationwide class of "[a]ll persons in the United States

7   who . . . purchased" Immune Support Gummies or Elderberry Gummies (Compl. ¶ 39), alleging

8   violations of Pennsylvania's statutory consumer protection law (*id.* ¶¶ 119-131), even though

9   nothing in the Complaint suggests plaintiff has ever purchased or used Emergen-C in Pennsylvania.

10   In the alternative, plaintiff seeks to represent two California classes.  One includes all California

11   purchasers and claims violations of the UCL, FAL, breach of express and implied warranties,

12   common law fraud and unjust enrichment (*id.* ¶¶ 50-63, 80-118), while the other is limited to

13   household purchasers and asserts a claim for violation of the CLRA *(id.* ¶¶ 64-79).

14   **ARGUMENT**

15   I.     **PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

16

17         In order "[t]o survive a motion to dismiss [for failure to state a claim], a complaint must

18   contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

19   face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

20   544, 570 (2007)).  The "plausibility standard . . . asks for more than a sheer possibility that a

21   defendant has acted unlawfully."  *Id.*  Rather, a "claim has facial plausibility when the plaintiff

22   pleads factual content that allows the court to draw the reasonable inference that the defendant is

23   liable for the misconduct alleged."  *Id.*  A court should not accept "legal conclusion[s] couched

24   as . . . factual allegation[s]" or "[t]hreadbare recitals of the elements of a cause of action, supported

25   by mere conclusory statements."  *Id.* (citation omitted).  In addition, for claims sounding in fraud,

26   including common law fraud and violations of the UCL, FAL and CLRA, a plaintiff must meet a

27   higher standard.  Specifically, a plaintiff must plead "'the who, what, when, where, and how of the

28   misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent]

statement.'"  *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055

1   (9th Cir. 2011) (alteration in original) (citation omitted).  As set forth below, plaintiff's claims fail

2   to satisfy this pleading standard.

3       **A.      Plaintiff's Claims Are Governed By California Law.**

4          In diversity cases, a federal court must apply the forum state's choice-of-law rules in

5   determining the applicable substantive law.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S.

6   487, 496 (1941).  To determine choice of law, California "looks to a three-step governmental

7   interest test."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012) (citing *McCann*

8   *v. Foster Wheeler LLC*, 225 P.3d 516, 527 (Cal. 2010)).  "First, the court determines whether the

9   relevant law of each of the potentially affected jurisdictions with regard to the particular issue in

10  question is the same or different.  Second, if there is a difference, the court examines each

11  jurisdiction's interest in the application of its own law under the circumstances of the particular

12  case to determine whether a true conflict exists."  *McCann*, 225 P.3d at 527.  Third, if both states

13  have a legitimate interest, and "the court finds that there is a true conflict, it carefully evaluates and

14  compares the nature and strength of the interest of each jurisdiction in the application of its own

15  law 'to determine which state's interest would be more impaired if its policy were subordinated to

16  the policy of the other state' and then ultimately applies 'the law of the state whose interest would

17  be more impaired if its law were not applied.'"  *Id.* (citations omitted).  Generally, consideration of

18  these factors leads to the rule that each individual's "consumer protection claim should be

19  governed by the consumer protection laws of the jurisdiction in which the transaction [i.e., the sale

20  of the product] took place."  *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal.

21  2013) (quoting *Mazza*, 666 F.3d at 594).

22         This case is no anomaly.  As to the first factor, there are significant material differences

23  between the consumer protection and fraud laws of California and those of the other state whose

24  laws plaintiff seeks to invoke:  Pennsylvania.  For example, Pennsylvania's UTPCPL requires that

25  a defendant act with "knowledge or reckless disregard," while the California consumer protection

26  statutes "have no scienter requirement."  *Mazza*, 666 F.3d at 591 (citing *Debbs v. Chrysler Corp.*,

27  810 A.2d 137, 155 (Pa. Super. Ct. 2002)).  "[T]here are also material differences in the remedies

28  given by state laws."  *Id.*  For instance, the California consumer fraud statutes provide for an

1   injunction, restitution, and punitive damages, in addition to actual damages of, at minimum,

2   $1,000.  *See id.* (discussing CLRA and UCL).  The relevant Pennsylvania statue, by contrast,

3   provides for actual damages of, at minimum, $100, which may be trebled, but does not provide for

4   injunctive, restitutionary or punitive relief.  73 Pa. Stat. and Cons. Stat. § 201-9.2(a); *see Richard v.*

5   *Ameriprise Fin., Inc.*, 152 A.3d 1027, 1035, 1039-40 (Pa. Super. Ct. 2016) (no punitive damages);

6   *Hughes v. Beard*, No. 594 M.D. 2009, 2010 WL 9519102, at *7 (Pa. Commw. Ct. Oct. 6, 2010) (no

7   injunctive relief).

8        Second, California has a significant interest in applying its own laws to plaintiff's claims.

9   "[E]very state has an interest in having its law applied to its resident claimants."  *Mazza*, 666 F.3d

10  at 591-92 (alteration in original) (quoting *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1187

11  (9th Cir. 2001)).  In *Mazza*, the plaintiffs sought to apply California consumer protection law to

12  claims brought in 44 different states.  666 F.3d at 591.  Even though the defendant was

13  headquartered in California, as was the agency that produced the allegedly deceptive

14  advertisements, the Ninth Circuit explained that the various states in which the consumers were

15  exposed to the representation and purchased the product all "ha[d] a strong interest in applying

16  [their] own consumer protection laws to those transactions."  *Id.* at 592.  This was so because states

17  that enact consumer protection laws are making a choice about the "optimal balance between

18  protecting consumers and attracting . . . businesses," a quintessential policy decision that

19  federalism entrusts to the "legislatures" and "supreme courts" of each state.  *Id.*  This case is no

20  different.  The California Legislature and California courts have made choices about how best to

21  protect California consumers and have an interest in ensuring that those choices are not displaced

22  by contrary decisions made by the Commonwealth of Pennsylvania.

23       Finally, assuming, for the sake of argument, that Pennsylvania has any interest in the

24  application of its laws at all, that interest is outweighed by California's.  The relevant question in

25  the interest balancing equation is "which jurisdiction should be allocated the predominating

26  lawmaking power under the circumstances of the present case."  *McCann*, 225 P.3d at 534.

27  Although it is no longer a hard-and-fast rule, "California . . . cases . . . continue to recognize that a

28  jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its

1  borders." *Id.*  This means that "the state where the last event necessary to make the actor liable

2  occurred" ordinarily "has the predominant interest."  *Mazza*, 666 F.3d at 593 (quoting *Hernandez*

3  *v. Burger*, 162 Cal. Rptr. 564, 568 (Ct. App. 1980) and citing *McCann*, 225 P.3d at 531 n.12).  In

4  this case, that is clearly California, the state where plaintiff purchased the Immune Support

5  Gummies and saw the allegedly deceptive label.

6           For all of these reasons, plaintiff's claims are governed by California law.

7           **B.      Plaintiff's FAL, CLRA, UCL And Common Law Fraud Claims Should Be**
                    **Dismissed.**
8
9           Plaintiff's claims under the FAL, the CLRA and the UCL and for common law fraud should

10  be dismissed because he does not allege an actionable misrepresentation.

11           *First*, in order state a claim for violation of the FAL, CLRA, the fraud prong of the UCL, or

12  common law fraud, a plaintiff must allege a statement that would be likely to mislead a reasonable

13  consumer.  *See, e.g.*, *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir 2016) ("[C]laims under the

14  California consumer protection statutes are governed by the 'reasonable consumer' test."); *Punian*

15  *v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *5 (N.D. Cal. Mar. 15, 2016)

16  ("Under all three statutes—the FAL, the CLRA, and the fraudulent prong of the UCL—conduct is

17  considered deceptive or misleading if the conduct is 'likely to []deceive[]' a 'reasonable

18  consumer.'  Because the same standard governs all three statutes, court often analyze the three

19  statutes together.") (citation omitted); *Sugawara v. Pepsico, Inc.*, No. 2:08-cv-01335-MCE-JFM,

20  2009 WL 1439115, at *4 (E.D. Cal. May 21, 2009) (dismissing UCL, FAL and CLRA claims

21  because consumers were "unlikely to [be] deceived[]" by the statements); *McKinnis v. Kellogg*

22  *USA*, No. CV 07-2611 ABC (RCx), 2007 WL 4766060, at *5 (C.D. Cal. Sept. 19, 2007)

23  (dismissing UCL, FAL and CLRA claims because packaging was "not deceptive"); *Brown v.*

24  *Starbucks Corp.*, No. 18cv2286 JM (WVG), 2019 WL 996399, at *5 (S.D. Cal. Mar. 1, 2019)

25  (failure to identify misleading statement under consumer fraud statute necessarily means "fail[ure]

26  to adequately plead the necessary element of misrepresentation or nondisclosure to support a

27  fraud . . . claim").[2]

28  _____
           [2]       The standard to state a claim for common law fraud is actually higher – i.e., the

1     Under this standard, the question is not whether the package "might conceivably be

2  misunderstood"; rather, the relevant standard requires "that a significant portion of the general

3  consuming public . . . acting reasonably in the circumstances, could be misled."  *Ebner*, 838 F.3d at

4  965 (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Ct. App. 2003)); *see,*

5  *e.g.*, *Becarra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (similar).  Thus,

6  courts regularly dismiss claims where, as here, the packaging was not likely to mislead a

7  significant portion of reasonable consumers.  *See, e.g.*, *Ebner*, 838 F.3d at 965-66 (affirming

8  dismissal of claims based on contention that lip balm weight was misleading where not all product

9  was accessible because the package contained "no . . . words, pictures, or diagrams . . . from which

10 *any* inference could be drawn or on which *any* reasonable belief could be based about how much of

11 the total lip product c[ould] be accessed"); *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th

12 Cir. 2001) (affirming dismissal of consumer fraud claim where "[n]one of the statements" on the

13 product labeling "expressly ma[de]" the claim underlying the plaintiff's allegations and where the

14 statement that was made on the labeling was "completely true"); *Romero v. Flowers Bakeries,*

15 *LLC*, No. 14-cv-05189-BLF, 2016 U.S. Dist. LEXIS 15868, at *18-19 (N.D. Cal. Feb. 8, 2016)

16 (Freeman, J.) (dismissing CLRA, UCL and FAL claims because "the Court cannot agree with

17 [p]laintiff that the word 'wheat' combined with 'wholesome wheat' and 'healthy grains' or

18 'Healthy White' alongside images of wheat stalks and honey pots could lead a reasonable

19 consumer to conclude that the breads 'contain a *significant amount* of whole wheat and are thus

20 healthier than other white breads'") (citation omitted).  Indeed, one California court has applied

21 this principle to dismiss a case with nearly identical allegations to this one.  *See Skylor v. Nordic*

22 *Naturals, Inc.*, No. CGC-17-562382, 2018 Cal. Super. LEXIS 2414, at *3-5 (Mar. 8, 2016) (where

23 front of the label "states '60 Gummies' and '82 mg Omega-3,'" no reasonable consumer would

24

25 _____

26 "fraudulent deception must be actually false" to be actionable.  *In re Actimmune Mktg. Litig.*, No.

27 C 08-02376 MHP, 2009 WL 3740648, at *7 (N.D. Cal. Nov. 6, 2009) (citation omitted), *aff'd*, 464

28 F. App'x 651 (9th Cir. 2011).

1   conclude that there were 82 mg of Omega-3 per gummy, rather than per three-gummy serving).[3]

2   Here, too, a reasonable consumer would not be misled by the product packaging because it

3   does not state or suggest that each gummy provides 750 mg of Vitamin C.  Moreover, the product

4   packaging contains explicit instructions, which state:  "**Directions:**  . . . Take three (3) gummies

5   daily."  And, as depicted above, the packaging expressly states in a table format that is familiar to

6   every purchaser of food products or nutritional supplements in this State (and country) that there

7   are three gummies per serving.  Time and again, the Ninth Circuit and district courts therein have

8   held that allegations do not satisfy the reasonable consumer test where the packaging containing

9   the alleged misrepresentation includes "disclosures that make[] the meaning of the representation

10   clear."  *Dinan v. SanDisk LLC*, No. 18-cv-05420-BLF, 2019 WL 2327923, at *4 (N.D. Cal. May

11   31, 2019) (Freeman, J.), *amended compl. dismissed*, 2020 WL 364277 (Jan. 22, 2020) (Freeman,

12   J.), *appeal filed*, No. 20-15287.  Indeed, courts have recognized that any "potential ambiguity"

13   created by a product package "c[an] be resolved by the back panel of" the same package.  *Bush v.*

14   *Mondelez Int'l, Inc.*, No. 16-cv-02460-RS, 2016 U.S. Dist. LEXIS 140013, at *8 (N.D. Cal. Oct. 7,

15   2016) (quoting *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015)); *see, e.g.*,

16   *Bobo v. Optimum Nutrition, Inc.*, No. 14CV2408 BEN (KSC), 2015 U.S. Dist. LEXIS 187233, at

17   *9 (S.D. Cal. Sept. 11, 2015) ("A plaintiff cannot pursue a claim based on a statement that can only

18   be misleading when the information surrounding it is ignored."); *Cheslow v. Ghirardelli Chocolate*

19   *Co.*, --- F. Supp. 3d ----, 2020 WL 6342929, at *5 (N.D. Cal. Oct. 29, 2020) ("[A] reasonable

20   

21   [3]   Although it is not published in an official reporter, *Skylor* is not a case that is

22   "designated[] 'NOT FOR CITATION'" within the meaning of Local Rule 3-4(e) or California

23   Rule of Court 8.1115.  *See, e.g.*, *Smith v. Intuit Inc.*, No. 5:12-cv-00222 EJD, 2012 WL 3945485, at

24   *4 n.1 (N.D. Cal. Sept. 10, 2012) (concluding that Rule 8.1115 does not apply "to unpublished

25   California Superior Court opinions").  This Court has cited such decisions in the past.  *See Towers*

26   *v. Iger*, No. 15-cv-04609-BLF, 2017 WL 6044035, at *10 (N.D. Cal. Mar. 10, 2017) (Freeman, J.)

27   (citing *In re Google Inc. S'holder Derivative Litig.*, No. 14-CV-261485, 2015 WL 9942165 (Cal.

28   Super. Ct. Nov. 24, 2015)), *aff'd*, 912 F.3d 523 (9th Cir. 2018).

1  consumer can review the product's ingredient list to dispel or ameliorate any confusion . . . .").[4]

2  That is especially appropriate in cases, like this one, involving food or supplements, products

3  where "[e]very reasonable shopper knows that the devil is in the details." *Workman*, 141 F. Supp.

4  3d at 1035.  In short, "reasonable consumers expect" that the full nutritional information provided

5  with virtually all packaged food and vitamin supplements will provide "more detailed information

6  about the product." *Id.* (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir.

7  2008)).

8      For this reason alone, plaintiff's claims for violation of the FAL, CLRA, the fraud prong of

9  the UCL and common law fraud should all be dismissed.

10     ***Second***, plaintiff fails to state a cause of action under the unfair and unlawful prongs of the

11  UCL as well.  "The unfair prong of the UCL prohibits a business practice that 'violates established

12  public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury . . . which

13  outweighs its benefits.'"  *Punian*, 2016 WL 1029607, at *17 (quoting *McKell v. Wash. Mut., Inc.*,

14  49 Cal. Rptr. 3d 227, 240 (Ct. App. 2006)).  When "unfair business practices alleged under the

15  _____

16      [4]   This Court's decision in *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-

17  BLF, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) (Freeman, J.), is not to the contrary.  There, the

18  Court held that the packaging of six- and twelve-packs of beer could be misleading

19  notwithstanding a disclaimer located ***on the bottles or cans*** themselves primarily because the

20  disclaimer was "obstructed by the packaging" and "not visible to the consumer at the time of

21  purchase," *id.* at *7, and also because the disclaimer was, itself, not fully forthcoming, *id.* at *8.

22  Here, there is no such obstruction and the directions and nutritional information are stated in

23  familiar formats right on the external packaging.  Nor does the Ninth Circuit's ruling in *Williams*

24  support plaintiff's claims.  "*Williams* stands for the proposition that *if* the defendant commits an act

25  of deception, the presence of fine print . . . is insufficient to dispel that deception." *Ebner*, 838

26  F.3d at 966; *see also, e.g.*, *Cheslow*, 2020 WL 6342929, at *5 (*Williams* applies when "literal

27  falseness on the product's front label" "conflicts" with a true statement "[on] the back label");

28  *Workman*, 141 F. Supp. 3d at 1036 (*Williams'* applicability is limited to affirmative

   misrepresentations).  This is not such a case.

9

1   unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent . . .

2   prong[] . . . , the unfair prong of the UCL cannot survive" if the fraud prong is dismissed.  *Hadley*

3   *v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1099 (N.D. Cal. 2017) (citation omitted) (citing, *inter*

4   *alia*, *Punian*, 2016 WL 1029607, at *17 and *In re Actimmune*, 2009 WL 3740648, at *14).

5           Here, the only basis on which plaintiff claims (or possibly could claim) that the phrase "750

6   mg Vitamin C" is unethical or contrary to public policy is by contending that it is misleading or

7   false.  (*See* Compl. ¶ 57 (contending business practices were unfair because they involved "false

8   and deceptive advertising").)  In other words, this claim merely repackages the claims plaintiff

9   brings under the fraud prong, and fails for the same reasons.

10          The same is true of plaintiff's claim under the unlawful prong of the UCL.  To state a claim

11  under this prong, a plaintiff must allege that the defendant engaged in a practice that violated a

12  specified "federal or California 'statute or regulation.'"  *Shaeffer v. Califa Farms, LLC*, 258 Cal.

13  Rptr. 3d 270, 277 (Ct. App. 2020); *see also, e.g.*, *In re Actimmune*, 2009 WL 3740648, at *15

14  (plaintiff must "identify the statutory or regulatory provisions that defendant[] allegedly violated").

15  Here, the only independent statutes that plaintiff contends were violated are the CLRA and FAL.

16  (*See* Compl. ¶ 54.)  If those claims are dismissed, the claim for illegal business practices must be

17  dismissed as well.

18          For all of these reasons, plaintiff has failed to state a claim under California's consumer

19  protection statutes or for common law fraud.

20      **C.      Plaintiff's Warranty Claims Should Be Dismissed For Two Reasons.**

21              1.      Plaintiff Cannot Show That Defendant Breached A Promise.

22          In order to prevail on a claim for breach of express warranty, a plaintiff must show:

23  "(1) 'the seller's statements constitute an affirmation of fact or promise or a description of the

24  goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.'"

25  *Broomfield*, 2017 WL 3838453, at *10.  While there are multiple ways to demonstrate a breach of

26  the implied warranty of merchantability, plaintiff proceeds on the theory that Emergen-C Gummies

27  fail to "[c]onform to the promises or affirmations of fact made on the container or label."  Cal.

28  Com. Code § 2314(2)(f) (cited in Compl. ¶ 100).  "When an implied warranty of merchantability

1  cause of action is based solely" on this theory, it "rises and falls with the express warranty claims

2  brought for the same product." *Hadley*, 273 F. Supp. 3d at 1096.

3        As this Court has explained, claims for breach of warranty based on allegedly deceptive

4  packaging can only be maintained in the case of "an unequivocal statement or promise" that is not

5  true. *Broomfield*, 2017 WL 3838453, at *10.  This is a higher standard than the one that governs

6  statutory consumer fraud claims.  For example, in *Broomfield*, discussed *supra*, this Court held that

7  beer packaging that listed a Hawaii address, a Hawaii map that purported to identify the location of

8  a brewery, and an invitation to visit the Hawaii brewery was plausibly misleading because none of

9  the beer sold on the U.S. mainland was brewed in Hawaii and there was no disclaimer

10  acknowledging this fact that the consumer could see before purchasing the beer.  *Id.* at *7.  At the

11  same time, however, the Court dismissed the warranty claims for lack of an "unequivocal"

12  falsehood.  *Id.* at *10.  Here, the case for dismissal is much stronger than it was in *Broomfield*.  As

13  noted above, there is no misstatement at all in this case, let alone a statement that is

14  "unequivocal[ly]" false.  For this reason alone, plaintiff's warranty claims should be dismissed.

15                      2.    Plaintiff's Implied Warranty Claim Separately Fails Because He Does Not
                             Allege Privity.

16        Plaintiff also fails to state a claim for breach of implied warranty because he does not and

17  cannot allege vertical privity.  "Under California law, '[t]he general rule is that privity of contract

18  is required in an action for breach of either express or implied warranty, and that there is no privity

19  between the original seller and a subsequent purchaser who is in no way a party to the original

20  sale.'"  *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 914 (E.D. Cal. 2018)

21  (alteration in original) (quoting *Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1048 (Cal. 1954)).

22  Although there is an exception for circumstances in which a customer relies on representations

23  made on a label, it is "applicable ***only*** to express warranties."  *Burr*, 268 P.2d at 1049 (emphasis

24  added); *see, e.g.*, *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1088 (S.D. Cal. 2019)

25  (reiterating and applying the rule from *Burr*).  The exception does not allow an ***implied*** warranty

26  claim to go forward absent privity.  Here, it is beyond dispute that plaintiff cannot show vertical

27  privity.  After all, plaintiff alleges that he purchased the product from Target, not Alacer.  (Compl.

28  ¶ 16.)  For this reason, too, his implied warranty claim should be dismissed.

1

### D.  <u>Plaintiff's Unjust Enrichment Claim Should Be Dismissed.</u>

2      Finally, plaintiff's unjust enrichment claim fails along with his underlying causes of action.

3 "To plead a cause of action for unjust enrichment, [p]laintiffs must allege 'receipt of a benefit and

4 unjust retention of the benefit at the expense of another.'"  *Punian*, 2016 WL 1029607, at *18

5 (citation omitted).  "If a plaintiff's underlying causes of action fail" the claim for unjust enrichment

6 must fail as well.  *Id.*; *see also, e.g.*, *In re Actimmune*, 2009 WL 3740648, at *16 (dismissing unjust

7 enrichment claims where underlying fraud claims had been dismissed; "courts routinely dismiss

8 unjust enrichment claims where a plaintiff cannot assert any substantive claims against a

9 defendant"); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 975 (N.D. Cal. 2008) ("[S]ince

10 plaintiff's fraud-based claims have been dismissed, plaintiff has no basis for an unjust enrichment

11 claim."), *aff'd*, 322 F. App'x 489 (9th Cir. 2009).  That principle controls here.  Plaintiff's unjust

12 enrichment theory is that "[d]efendant ***misrepresented***" the products' "characteristics" (Compl.

13 ¶ 109 (emphasis added)), and made "***deceptive***" statements (*id.* ¶ 108 (emphasis added)).  As set

14 forth above, defendant did not engage in any misrepresentations or break any promises.

15 Accordingly, any benefit defendant received and retained from plaintiff cannot possibly have been

16 unjust, and plaintiff's unjust enrichment claim must be dismissed as well.

17 ## II.  <u>PLAINTIFF CANNOT ASSERT A CLAIM UNDER THE UTPCPL.</u>

18      Count VIII of plaintiff's Complaint asserts a claim under the Pennsylvania UTPCPL.  As

19 set forth above, however, plaintiff is a California resident and does not allege that he has ever

20 purchased any Emergen-C product outside of California.  Thus, he cannot bring claims under the

21 laws of any other state, and this claim should be dismissed.  *See, e.g.*, *Pardini*, 961 F. Supp. 2d at

22 1061 (dismissing claim because "[p]laintiff does not have standing to assert a claim under the

23 consumer protection laws of . . . states" other than the one in which she purchased the product);

24 *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *4 (N.D. Cal. July 11,

25 2012) ("Where . . . a representative plaintiff is lacking for a particular state, all claims based on *that*

26 state's laws are subject to dismissal.") (alteration in original) (citation omitted).

27 ## III.  <u>PLAINTIFF LACKS STANDING TO ASSERT A CLAIM FOR INJUNCTIVE RELIEF.</u>

28      "[S]tanding is not dispensed in gross."  *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-

1  6534 PSG (JCx), 2018 WL 6714323, at *3 (C.D. Cal. Oct. 17, 2018) (alteration in original)

2  (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)).  Rather, a plaintiff must demonstrate

3  standing for each cause of action that he brings and each form of relief that he seeks.  Here,

4  plaintiff lacks standing to seek injunctive relief under any legal theory because he indisputably

5  knows at this point that a serving size is three gummies.  Therefore, even if the label were

6  deceptive, he cannot plausibly allege that he would be deceived by it in the future.

7        It is axiomatic that the prospect of a "bare procedural violation, divorced from any concrete

8  harm," is insufficient to show standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).  As

9  such, in order to have standing to seek injunctive relief, a plaintiff must show "a sufficient

10 likelihood that he will again be wronged in a similar way."  *City of L.A. v. Lyons*, 461 U.S. 95, 111

11 (1983).  Thus, courts, including this one, routinely dismiss claims for injunctive relief where a

12 plaintiff, though once deceived, is now aware of the alleged misrepresentation and therefore not

13 "likely to suffer harm by being misled . . . in the future."  *Babaian v. Dunkin' Brands Grp., Inc.*,

14 No LACV 17-4890-VAP (MRWx), 2018 U.S. Dist. LEXIS 98673, at *14 (C.D. Cal. June 12,

15 2018); *see, e.g.*, *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-cv-06664-BLF, 2020 WL

16 5910071, at *8 (N.D. Cal. Oct. 6, 2020) (Freeman, J.) ("Given what [p]laintiff knows about

17 [d]efendants' products and his preference[s] . . . , the Court does not find it plausible that he would

18 be misled into purchasing these [p]roducts in the future.").  That is especially true in cases where

19 any questions about whether the alleged misrepresentation continues can be resolved if the plaintiff

20 "in the future simply look[s] at the [relevant part of the] label."  *Shanks v. Jarrow Formulas, Inc.*,

21 No. LA CV 18-09437 PA (AFMx), 2019 U.S. Dist. LEXIS 227427, at *16-17 (C.D. Cal. Dec. 27,

22 2019); *see, e.g.*, *Cordes*, 2018 WL 6714323, at *3-4 (plaintiff allegedly misled by non-functional

23 slack fill had no standing to pursue injunctive relief "now that he knows that he can easily

24 determine the number of pretzels in each package by simply reading the label"); *Matic v. U.S.*

25 *Nutrition, Inc.*, No. CV 18-9592 PSG (AFMx), 2019 WL 3084335, at *8 (C.D. Cal. Mar. 27, 2019)

26 (no standing to pursue injunctive relief because "[p]laintiff is now aware that he can find out how

27

28

much protein powder is in [d]efendant's containers by simply looking at the label").[5]

Here, plaintiff's Complaint makes clear that he is now well aware that "a customer must consume three [g]ummies to receive 750 mg of Vitamin C" in the case of the Immune Support Gummies "or 50 mg of elderberry juice concentrate" in the case of the Elderberry Gummies. (Compl. ¶ 25; *see id.* ¶ 29 (consumers "receive 250 mg of Vitamin C or 16.6 mg of elderberry juice concentrate in each [g]ummy").)  Although plaintiff contends that he "will be unable to rely with confidence on [d]efendant's representations in the future" (*id.* ¶ 17), the reality is that he knows exactly how much of the relevant ingredient each individual gummy contains and where on the package it states how many gummies there are in a serving.  For the same reason, plaintiff's allegation that there is still "doubt in his mind" about how much of the relevant ingredient is in each gummy (Compl. ¶ 17), cannot support a claim for injunctive relief.  The fact that the gummies do not each contain 750 mg of Vitamin C or 50 mg of elderberry juice appears repeatedly in his own Complaint, and is clearly explained by the labels that are cited in the Complaint.  The Court need not accept as true "allegations which are contradicted by documents referred to in the complaint," much less allegations that are contradicted by the rest of the Complaint itself. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

For this reason, too, plaintiff's claim for injunctive relief should be dismissed.

## IV.   THE COURT SHOULD ALTERNATIVELY STRIKE PLAINTIFF'S CLASS ALLEGATIONS IN PART.

In the event the Court declines to dismiss some or all of plaintiff's claims, it should still strike:  (1) plaintiff's proposed nationwide class; and (2) all claims based on Elderberry Gummies

---

[5]      *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), which held that a previously deceived plaintiff may have standing to pursue injunctive in one of two very narrow circumstances, is inapposite.  That case involved a plaintiff "who could not easily determine whether the defendant's previous [alleged] misrepresentations had been cured without first buying the product" again.  *Cordes*, 2018 WL 6714323, at *4 (discussing and distinguishing *Davidson*). Here, plaintiff can look at a package of Immune Support Gummies (or any other Emergen-C product) on the shelf at the store and know exactly how many gummies there are per serving.

1  from plaintiff's statewide classes.

2      The Court has the authority to strike "any redundant, immaterial, impertinent, or scandalous

3  matter." Fed. R. Civ. P. 12(f).  This includes class allegations, when it is plain from the face of the

4  complaint that they cannot be sustained.  *See, e.g.*, *Carpenter v. Petsmart, Inc.*, 441 F. Supp. 3d

5  1028, 1031, 1038-39 (S.D. Cal. 2020) (granting motion to strike nationwide class because

6  "plaintiff's lack of standing [was] 'plain enough from the pleadings'") (citations omitted).  In

7  addition, in putative class actions, a court may "require that the pleadings be amended to eliminate

8  allegations about representation of absent persons." Fed. R. Civ. P. 23(d)(1)(D).  Such relief is

9  appropriate here in two respects.

10      ***Nationwide Class.***  The sole basis for the nationwide class is the Pennsylvania law claim.

11  Plaintiff's Complaint does not seek to represent a nationwide class with respect to any other claim;

12  rather, the rest of his claims are expressly advanced on behalf of Californians only.  (*See* Compl.

13  ¶ 120 (alleging UTPCPL claim "individually and on behalf of the [n]ationwide [c]lass"); *see also*

14  *id.* ¶¶ 51, 65, 81, 89, 98, 106, 112 (asserting all other claims on behalf of "California [c]lass" or

15  "California [c]onsumer [s]ubclass").)  As discussed above, however, plaintiff's claims are

16  governed by California law.  Thus, he cannot assert claims under Pennsylvania law and lacks

17  standing to represent a class seeking to recover under Pennsylvania law.  *See, e.g.*, *Carpenter*, 441

18  F. Supp. 3d at 1041 (named plaintiff lacked "standing to assert claims on behalf of unnamed class

19  members under other states' laws that d[id] not govern his own claims"); *Pardini*, 961 F. Supp. 2d

20  at 1061 (dismissing nationwide class claim because "there is only one named plaintiff" and she

21  lacked "standing to assert a claim under the consumer protection laws of . . . other states").

22  Accordingly, the nationwide class claims should be stricken.

23      ***Elderberry Gummies.***  The Court should also strike purchasers of Elderberry Gummies

24  from plaintiff's proposed class because plaintiff does not have standing to assert claims on their

25  behalf.

26      As this Court has previously recognized, Article III standing is satisfied only when there is

27  "substantial similarity" between the products the plaintiff actually purchased and the ones about

28  which he or she seeks to sue.  *Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492-BLF, 2014

1   WL 6657809, at *3 (N.D. Cal. Nov. 21, 2014) (Freeman, J.); *see also, e.g.*, *Holt v. Foodstate, Inc.*,

2   No. 15cv78 L (JMA), 2015 WL 9592534, at *2-3 (S.D. Cal. Dec. 31, 2015) (dismissing claim

3   based on unpurchased products "[b]ecause plaintiffs have not alleged that the unpurchased

4   products are substantially similar to the products plaintiffs purchased").

5        "Substantial similarity" is a demanding test.  The products must, at a minimum, "contain

6   similar ingredients and must have similar packaging and labeling."  *Holt*, 2015 WL 9592534, at *2.

7   Differences revealed in the nutritional, drug or supplement facts suggest that the products cannot

8   be grouped together; for instance, products are likely not substantially similar if one contains a

9   higher or lower quantity of certain nutrients than the other.  *See id.*; *Dysthe v. Basic Rsch. LLC*, No.

10  CV 09-8013 AG (SSx), 2011 WL 5868307, at *4-5 (C.D. Cal. June 13, 2011).  Differences in

11  ingredients similarly suggest the products are distinct.  *See Dysthe*, 2011 WL 5868307, at *4; *Holt*,

12  2015 WL 9592534, at *2.  "Different packaging," including differences in color or wording, also

13  suggest the products are not sufficiently similar.  *See Dysthe*, 2011 WL 5868307, at *5.  The mere

14  fact that the challenged labeling statements are the same or similar is insufficient.  *See Leonhart v.*

15  *Nature's Path Foods, Inc.*, No. 5:13-CV-0492-EJD, 2014 WL 1338161, at *4 (N.D. Cal. Mar. 31,

16  2014) (Davila, J.) (finding no standing because the plaintiff did "not allege that the products [we]re

17  substantially similar beyond having the same labeling statements").

18       Here, plaintiff does not even attempt to explain whether or how the two products at issue in

19  his Complaint – the Immune Support Gummies and the Elderberry Gummies – are substantially

20  similar.  Moreover, the photographs in the Complaint demonstrate the extent to which the

21  packaging differs.  The Elderberry Gummy package says "Elderberry" and "IMMUNE PLUS" in

22  large letters and promises "Antioxidants and Vitamin D for Immune Support," along with "High

23  Potency Vitamin C," while the Immune Support Gummy package says "Gummies" in large letters

24  and promises "Immune Support" and to "Enhance Energy with B Vitamins."  Most importantly,

25  the challenged statements are different.  While the packaging for the Elderberry Gummies states

26  that they are "Crafted with 50 mg of elderberry juice concentrate," the packaging for the Immune

27  Support Gummies states that they contain "750 mg Vitamin C" – a different amount and a different

28  ingredient.  In addition, although the black-and-white photos in plaintiff's Complaint do not show

1  it, the bottles are different colors.  About the only thing the two products have in common is that

2  both reference the same brand name and both make some statement about the amount of some

3  ingredient.  If that level of generality sufficed, the Article III requirement that a person bring suit

4  based on a product that actually caused him or her harm would be effectively nullified.

5          Accordingly, in the event plaintiff's claims are not dismissed in full, his class claims should

6  be stricken to the extent they include allegations regarding the Elderberry Gummies product he

7  does not allege that he purchased.

8                                          **CONCLUSION**

9          For the foregoing reasons, the Court should grant the motion to dismiss plaintiff's claims.

10 In the alternative, the Court should, at a minimum, strike the nationwide class allegations in full

11 and the California class allegations in part.

12 DATED: Dec. 31, 2020

13

14                                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM

15

16                                          By: /s/ Emily Reitmeier

17                                              EMILY REITMEIER
                                                Attorneys for Defendant Alacer Corp.

18

19

20

21

22

23

24

25

26

27

28