# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| JEFFREY CIMOLI, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALACER CORP.,<br><br>Defendant. | Case No. 5:20-cv-07838-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF 17 |

Plaintiff Jeffrey Cimoli ("Plaintiff") brings this putative consumer class action against Defendant Alacer Corp. ("Defendant"). Plaintiff asserts eight causes of action against Defendant for allegedly misleading labels on two of Defendant's products. Before the Court is Defendant's motion to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See generally* Mot., ECF 17. The Court heard oral argument on Defendant's motion on June 3, 2021. For the reasons stated on the record at the hearing and discussed below, Defendant's motion is GRANTED IN PART WITH LEAVE TO AMEND and DENIED IN PART.

## I. BACKGROUND[1]

Plaintiff is an individual consumer and a citizen of California, currently residing in San Jose. Compl. ¶ 16, ECF 1. Defendant is a California corporation with its principal place of business in Carlisle, Pennsylvania. *Id.* ¶ 18. Defendant sells Emergen-C brand products, including several varieties of Emergen-C brand Immune Support Gummies. *Id.* ¶ 2. Plaintiff's complaint centers on

---

[1] Plaintiff's well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

two of these Immune Support Gummies: a Vitamin C supplement product (the "Vitamin C Gummies") and an Elderberry supplement product (the "Elderberry Gummies") (collectively, the "Products"). The front label of the Vitamin C Gummies represents that the product contains 750 mg of Vitamin C. *Id*. ¶ 3. The front label of the Elderberry Gummies represents that the product is "[c]rafted with 50 mg of elderberry juice concentrate." *Id*. ¶ 3. Defendant sells these products nationwide. *Id*. ¶ 18.

In or around June 2020, Plaintiff purchased the Vitamin C Gummies from a Target in San Jose, California. Compl. ¶ 16. When Plaintiff purchased the Vitamin C Gummies, he allegedly relied on the dosage information provided on the Vitamin C Gummies' front label, which reads "750 mg of Vitamin C" and "45 Gummies." *Id*. ¶ 16. Plaintiff alleges that he believed the Vitamin C Gummies product contained 45 Gummies, *each* of which contained 750 mg of Vitamin C. *Id*. Plaintiff further claims he would not have purchased the Vitamin C Gummies or would have paid less for the Vitamin C Gummies had he not been misled by the front label. *Id*. Though Plaintiff has not purchased the Elderberry Gummies, he claims that the label misleads consumers in the same manner as the label of the Vitamin C Gummies. *Id*. ¶¶ 23-25. Plaintiff's primary theory of liability is that "[a] reasonable consumer understands [the representations on the front of the Products] to mean that each Gummy will contain 750 mg of Vitamin C or 50 mg of elderberry juice concentrate." *Id*. ¶ 24.

Plaintiff proposes a nationwide class of consumers who purchased Defendant's Gummies along with a "California Subclass" and a "California Consumer Subclass." Compl. ¶ 39. The Nationwide Class includes "[a]ll persons in the United States who, within the relevant statute of limitations period, purchased any of the Products." *Id*. The California Subclass includes "[a]ll persons who, within the relevant statute of limitations period, purchased any of the Products in the state of California." *Id*. The California Consumer Subclass includes those who purchased the Products for "personal, family, or household purposes in the state of California." *Id.*

2

Plaintiff filed this action on November 5, 2020, asserting eight causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, (on behalf of the California Class); (2) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, (on behalf of the California Consumer Subclass); (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, (on behalf of the California Class); (4) breach of express warranty, Cal. Com. Code § 2313, (on behalf of the California Class); (5) breach of implied warranty, Cal. Com. Code § 2314, (on behalf of the California Class); (6) unjust enrichment/quasi-contract (on behalf of the California Class); (7) common law fraud (on behalf of the California Class); and (8) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1, *et seq.*, (on behalf of the Nationwide Class). *See generally* Compl.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### B. Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court

3

ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. When considering these factors, "prejudice to the opposing party…carries the greatest weight." *Id*. However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### III. DISCUSSION

Defendant moves to dismiss on multiple grounds. First, Defendant argues Plaintiff's claims are governed by California law and, therefore, Plaintiff cannot advance a claim for violation of the UTPCPL on behalf of the nationwide class. Mot. at 4-6, 12-14. Second, Defendant argues that Plaintiff's FAL, CLRA, UCL, and common law fraud claims should be dismissed for failure to allege an actionable misrepresentation. *Id*. at 6-10. Third, Defendant argues that Plaintiff's breach of express and implied warranty claims must fail because Plaintiff does not allege facts to establish an affirmation of fact or promise that each Products' dosage is per gummy. *Id*. at 10-11. Defendant also asserts that Plaintiff's implied warranty claims fail because of California's privity requirement. *Id*. at 11. Fourth, Defendant claims Plaintiff lacks standing to pursue injunctive relief under California's consumer protection statutes. *Id*. at 12-14. Finally, Defendant contends the Court should strike purchasers of the Elderberry Gummies from the putative classes for lack of standing. *Id*. 15-17. The Court addresses each argument in turn.

#### A. UTPCPL Claim and Nationwide Class

Plaintiff brings Count VIII against Defendant for a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2. The UTPCPL declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 P.S. § 201-3. For example, 73 PS § 201-2(4)(v) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or

4

quantities that they do not have . . . ."

Defendant argues that California law governs under choice-of-law rules and that Plaintiff is consequently prohibited from bringing claims under the UTPCPL on behalf of the nationwide class. Mot. at 4-6, 15. Plaintiff responds that the nationwide class and UTPCPL claim should survive dismissal because the UTPCPL may be applied to consumers outside of Pennsylvania if the transaction involved a Pennsylvania defendant. Opp. at 4, 16. Plaintiff further contends that the Court should apply California law to his claims brought on behalf of the California classes and Pennsylvania law to the claim brought on behalf of the nationwide class. *Id*. at 4. Accordingly, Plaintiff argues that no choice-of-law analysis is required because the Court should apply the law of both states. *Id*.

As an initial matter, the Court finds that the UTPCL may apply extraterritorially. In *Danganan v. Guardian Protection Services*, the Pennsylvania Supreme Court, on certification from the Third Circuit, considered whether "a non-resident may bring a [UTPCPL] claim against a Pennsylvania business premised on an out-of-state transaction." 645 Pa. 181, 186 (2018). *Danganan* involved a plaintiff who purchased home security equipment for his home in Washington, D.C. from the defendant, a company headquartered in Pennsylvania. *Id*. at 183. The contract signed by the parties included a choice-of-law provision applying Pennsylvania law to the agreement. *Id*. The state supreme court found that "the plain language definitions of 'person' and 'trade' and 'commerce' evidence no geographic limitation or residency requirement relative to the [UTPCPL]'s application." *Id*. at 193. Therefore, the court found that a non-resident may bring a UTPCPL claim against a business headquartered in Pennsylvania even if the transaction itself took place out-of-state. *Id*. at 193-94. The court cautioned, however, that the reach of the UTPCPL is still limited by "jurisdictional principles and choice-of-law rules." *Id*. at 194-95.

Like the parties in *Danganan*, Plaintiff, a California resident, has brought a UTPCPL claim against Defendant, a Pennsylvania-based corporation, for a transaction that took place outside of

5

Pennsylvania. Compl. ¶¶ 16, 18. Given the *Danganan* court's holding that "mere non-residence would not categorically prohibit such claims against a Pennsylvania business arising from transactions that occurred outside of Pennsylvania," *Danganan v. Guardian Prot. Servs.*, No. CV 15-1495, 2019 WL 2464770, at *1 (W.D. Pa. June 13, 2019), *aff'd*, 813 F. App'x 769 (3d Cir. 2020), Plaintiff correctly notes that the UTPCPL reaches transactions beyond Pennsylvania's borders. However, unlike in *Danganan*, the parties here did not contractually agree to the application of any particular state's law. The Court thus concludes that while that UTCPL *may* apply to the transaction alleged in the complaint, this application is nonetheless limited by choice-of-law rules. *See Danganan*, 2019 WL 2464770, at *1 ("choice-of-law rules can bar UTPCPL claims by those without any connection to Pennsylvania."). The remaining issues before the Court are whether a Plaintiff may advance consumer fraud claims under two different state's laws and, if not, which state's law should be applied under choice-of-law rules. The Court will consider these issues in light of Plaintiff's best pleading. The Court DEFERS ruling on Plaintiff's UTPCPL claim until the fully amended pleading can be reviewed.

**B.  The Reasonable Consumer Test and Fraud-Based Claims**

Plaintiff brings four fraud-based claims: (1) violation of the UCL, Compl. ¶¶ 50-63, (2) violation of CLRA, *id*. ¶¶ 64-79, (3) violation of the FAL, *id*. ¶¶ 80-87, and (4) common law fraud, *id*. ¶¶ 111-118. The parties agree that these claims are governed by the "reasonable consumer" test. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (applying the reasonable consumer test to FAL, CLRA and UCL claims). The reasonable consumer test requires Plaintiff show that "members of the public are likely to be deceived" by Defendant's conduct. *Id.* at 938 (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995)).

Defendant argues that Plaintiff's UCL, CLRA, FAL, and common law fraud claims should be dismissed because the misrepresentations alleged are not likely to deceive a reasonable consumer. Mot. at 6-8. To support this contention, Defendant points to the Products' back label, which clarifies

the dosage of the Vitamin C and Elderberry juice is per serving—not per gummy. Mot. at 8. In turn, Plaintiff argues that Defendant's proposed standard improperly places the onus on consumers to investigate the supplemental facts on a product's back label to determine the truth of a representation on the front label. Opp. at 8.

The Court agrees with Plaintiff. In *Walters v. Vitamin Shoppe Industries*, the Ninth Circuit held that a plaintiff "did not have a duty to validate claims on the front of a product's label by cross-checking them against information contained in small print on the back." 701 F. App'x 667, 670 (9th Cir. 2017) ("*Walters II*"); *see also Williams*, 552 F.3d at 939–40 ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging."). The plaintiff alleged that products sold by the defendant carried misleading labels because they displayed dosage information per serving rather than per unit. *Walters v. Vitamin Shoppe Indus., Inc.*, No. 3:14-CV-01173-PK, 2015 WL 3916972, at *2 (D. Or. June 25, 2015) ("*Walters I*"). One such product was Calcium 1000 mg Caramel Chews, which required individuals to consume a two-chew serving to receive the full 1000 mg of calcium toted on the product's front panel. *Id*. In *Walters I*, the district court dismissed plaintiff's fraud claim because the product included clarifying information in the supplemental facts section located in small print on the products' back panel. *Id*. at *8. The Ninth Circuit reversed, explaining that "[c]onsumers review the small print on a product's label to learn additional details about a product, not to correct potentially misleading representations found on the front." *Walters II,* 701 F. App'x at 670 (citing *Williams*, 552 F.3d at 939–40).

As in *Walters*, the representations on the front panel of the Products include a specific dosage representation without any indication as to whether the dosage is per serving or per unit. Compl. ¶ 16. Defendant argues that a reasonable consumer could not be misled by the representation because

7

the information panel on the back of the Products instructs the purchaser to consume a three-gummy serving size and to take three gummies daily "in a table format that is familiar to every purchaser of food products or nutritional supplements in this State." Mot. at 8. The facts before the Ninth Circuit in *Walters II* are nearly identical to the facts at issue in this case. Plaintiff here, like the plaintiff in *Walters*, was able to clarify the dosage representation made on the front by checking the nutritional facts label on the back of the Products. Despite the availability of clarifying information on the back label, the Ninth Circuit in *Walters II* held that a plaintiff's failure to "read the clarifying serving-size information does not constitute a failure to reasonably safeguard his interests." 701 F. App'x at 670. Following the Ninth Circuit's guidance in *Walters II*, the Court finds that Plaintiff has properly alleged an actionable misrepresentation. *See also Williams*, 552 F.3d at 939-940 ("reasonable consumers expect that the ingredient list contains more detailed information about the product that *confirms other representations* on the packaging." (emphasis added)).

Defendant cites to various other cases to support their position, but none is as persuasive as *Walters II*. For example, Defendant points to *Skylor v. Nordic Naturals, Inc.*, No. CGC-17- 562382, 2018 Cal. Super. LEXIS 2414, at *3-5 (Mar. 8, 2016), as an example of where a court "dismiss[ed] a case with nearly identical allegations to this one." Mot. at 7. While the Court agrees that *Skylor* involved allegations nearly identical to those before the Court now, the California Superior Court primarily supported its decision with *Goldman v. Bayer AG*, No. 17-CV-0647-PJH, 2017 WL 3168525 (N.D. Cal. July 26, 2017)—which was later vacated and remanded. *Goldman v. Bayer AG*, 742 F. App'x 325 (9th Cir. 2018). And the allegations before the Ninth Circuit in *Ebner v. Fresh, Inc.* are dissimilar to those before the Court. 838 F.3d 958, 962 (9th Cir. 2016) (holding that the weight label on a tube of lip balm "does not contradict other representations or inferences on [the defendant's] packaging."). Neither of these cases carries the day for Defendant in light of *Walters II*, where the Ninth Circuit characterized representations nearly identical to those at issue here as "potentially misleading." 701 F. App'x at 670; *see also Williams*, 552 F.3d at 939 (rejecting the

8

argument that "reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). Therefore, the Court DENIES Defendant's motion to dismiss Plaintiff's CLRA, FAL, UCL, and common law fraud claims.

### C. Unjust Enrichment

Defendant also moves to dismiss Plaintiff's unjust enrichment claim, arguing that it rises and falls alongside Plaintiff's underlying fraud-based claims. Mot. at 12. The Court agrees, and the parties do not argue otherwise. Opp. at 16; Reply at 2, n.1; *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607 at *18 (N.D. Cal. Mar. 15, 2016) (to succeed in a claim for unjust enrichment, Plaintiff must allege "receipt of a benefit and unjust retention of the benefit at the expense of another." (internal marks omitted)); *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *5 (N.D. Cal. Dec. 17, 2009) (a "claim for unjust enrichment cannot stand alone as an independent claim for relief."). Because the Court has denied Defendant's motion as to Plaintiff's CLRA, FAL, UCL and common law fraud claims, the Court necessarily DENIES Defendant's motion to dismiss Plaintiff's unjust enrichment claim.

### D. Express and Implied Warranty Claims

Plaintiff's breach of express warranty claim is predicated on California Commercial Code § 2313, which states in relevant part:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Cal. Com. Code § 2313(1)(a), (b). To prevail on a claim for breach of express warranty, a plaintiff must show (1) "the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was

9

breached." *Weinstat v. Dentsply Int'l, Inc.,* 180 Cal.App.4th 1213, 1227 (2010) (internal quotation marks and citation omitted).

Defendant argues that Plaintiff's express warranty claim fails because Plaintiff has not pled sufficient facts to show that Defendant breached an affirmation of fact or promise. Mot. at 10. Plaintiff responds that the representations on the front label of the Products are false affirmations of fact. Opp. at 13. The Court finds that the dosage representations on the front of the Products are not an affirmation that the dose listed is per gummy rather than per serving.

In *Broomfield v. Craft Brew Alliance, Inc.*, the plaintiff claimed that representations on the labels of beers brewed and bottled by defendant misled consumers to believe the beer was brewed in Hawaii. No. 17-CV-01027-BLF, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017). The representations at issue included an image of a map of Hawaii marking the location of the defendant's brewery and an invitation to visit defendant's brewery while in Hawaii. *Id*. at *1. While the defendant's owned a brewery in Hawaii that produced all its draft beer sold in Hawaii, the defendant's beer bottled and sold outside of Hawaii was brewed in the continental United States. *Id*. This Court held that while these representations could mislead a reasonable consumer, the representations did not breach an express warranty because they "[did] not amount to an unequivocal statement or promise to the consumer that Kona beer is brewed exclusively in Hawaii." *Id*. at *10. The Court further explained that "the fact that each representation is a truthful statement makes it difficult for Plaintiffs to prevail on an express warranty claim in this case." *Id.*

Like in *Broomfield*, the representations on the Products do not amount to an unequivocal statement or promise that the dosage is per gummy and are otherwise truthful statements. Plaintiff's assertion that "the dosage representations are affirmations of fact that the Products contain a specific dosage of Vitamin C or Elderberry per gummy" is conclusory and inaccurate. Opp. at 13 (citing Compl. ¶¶ 3-4, 16, 90-91, 94); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause

10

of action's elements, supported by mere conclusory statements"). The Complaint includes photographs of the Product labels, which state "750 mg Vitamin C" and "Crafted with 50 mg of elderberry juice concentrate." Compl. ¶¶ 22-23. Despite the possibility that the dosage representations misled Plaintiff, *see* Section III.B (discussing Plaintiff's fraud-based claims), they fail to explicitly affirm the dosage is per gummy. Further, as in *Broomfield*, the representations at issue here are true. Nowhere in the Complaint is it alleged that the Vitamin C Gummies do not in fact contain 750 mg of Vitamin C per serving or that the Elderberry Gummies are not crafted with 50 mg of elderberry juice concentrate per serving. *See generally* Compl. Although a reasonable consumer could be misled by the absence of clarifying language on the Product's front label, neither of the representations are express affirmations of fact or promises that the dosage information is per gummy.

Defendant also moves to dismiss Plaintiff's implied warranty claim, arguing that it rises and falls with Plaintiff's express warranty claim. Mot. 10-11. The Court agrees. Because the Court has found that Plaintiff has not pled an affirmation of fact or promise that the dosage representations are per gummy, Plaintiff's implied warranty claim fails.[2] Accordingly, the Court DISMISSES WITH LEAVE TO AMEND Plaintiff's breach of express and implied warranty claims. Although it is not clear that any amendment could cure these deficiencies, the Court will allow Plaintiff the opportunity to amend.

E. **Plaintiff's Standing to Pursue Injunctive Relief**

Plaintiff seeks injunctive relief in connection with his UCL and CLRA claims. Compl. ¶ 63, 77. Defendant challenges whether Plaintiff has Article III standing to seek injunctive relief in

---

[2] Defendant also argues that Plaintiff's implied warranty claim fails because he did not allege privity. Mot. at 11; *see also* Opp. at 15. However, because Plaintiff's implied warranty claim fails on other grounds, the Court need not consider the existence of privity nor any exception to the requirement of privity under California law.

11

connection with these claims. Mot. at 12-14. In particular, Defendant argues that Plaintiff fails to show "'a sufficient likelihood that he will again be wronged in a similar way.'" *Id*. at 13 (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)).

The Court agrees. In general, "[p]ast exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States, 599 F.3d 964*, 970 (9th Cir. 2010). Article III requires plaintiffs show a "real or immediate threat . . . that [they] will again be wronged in a similar way" to obtain injunctive relief. *Id*. (quoting *Lyons*, 465 U.S. at 111). Plaintiff argues he has standing because he "is (1) unable to rely on the defendant's representations in the future; [and] (2) may purchase the mislabeled product (as is) in the future." Opp. at 17 (citing *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2017 WL 5665654, at *4 (N.D. Cal. Nov. 27, 2017)).

He also argues that the Ninth Circuit has rejected the argument Defendant forwards here, namely that "prior knowledge of false advertising prohibits standing." Opp. at 17 (citing *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 969-70 (9th Cir. 2017)).

Plaintiff's reliance on the Ninth Circuit's holding in *Davidson* is inapt here. The Ninth Circuit in *Davidson* affirmed that "a previously deceived consumer *may* have standing to seek injunctive relief" in certain circumstances. 889 F.3d at 969 (emphasis added). The plaintiff in *Davidson* purchased flushable wipes manufactured by the defendant, but later learned the wipes were not in fact flushable. *Id*. at 961-962. The court in *Davidson* ultimately held that the plaintiff had Article III standing to seek injunctive relief because the plaintiff had "no way of determining whether the representation 'flushable' [was] in fact true" without first purchasing the wipes and therefore a "threatened injury" was still "certainly impending." *Id*. at 972 (citing *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 410 (2013)). This conclusion was motivated by the court's determination that the plaintiff "face[d] the similar injury of being unable to rely on [defendant's] representations of its product in deciding whether or not she should purchase the product in the future." *Id.* at 971-

12

72 (citing *Lyons*, 461 U.S. at 111).

Unlike the plaintiff in *Davidson*, Plaintiff has not (and cannot) reasonably claim that he has no way of determining whether Defendant's representations are true. The complaint explicitly notes that "a customer must consume three [g]ummies to receive 750 mg of Vitamin or 50 mg of elderberry juice concentrate." Compl. ¶ 25. Plaintiff is aware that the dosage representations on the front of the Products refer to a serving size of gummies. And several district courts relying on *Davidson* have found a plaintiff lacks standing where the plaintiff could "easily discover whether a previous misrepresentation had been cured without first buying the product at issue." *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCX), 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (finding plaintiff lacked standing for injunctive relief because "now that [p]laintiff is on notice about potential underfilling, he could easily determine the number of pretzels in each package before making a future purchase by simply reading the back panel. . . ."); *Shanks v. Jarrow Formulas, Inc.*, No. LACV1809437PAAFMX, 2019 WL 7905745, at *5 (C.D. Cal. Dec. 27, 2019) (finding plaintiff lacked standing because "in the future [plaintiff can] simply look at the label on Defendant's coconut oil . . . and put it back."); *Matic v. United States Nutrition, Inc.*, No. CV189592PSGAFMX, 2019 WL 3084335, at *8 (C.D. Cal. Mar. 27, 2019) (finding plaintiff lacked standing because "he knows precisely where to find" clarifying information on a product label). Because Plaintiff knows that he can determine the Products' dosages by consulting the back labels, Plaintiff cannot plausibly allege that he faces a real or immediate threat of similar, future harm. Accordingly, Defendant's motion to dismiss Plaintiff's request for injunctive relief is GRANTED.

### F. Plaintiff's Standing to Assert Claims on Behalf of California Purchasers of the Elderberry Gummies

As this Court has previously recognized, a plaintiff has Article III standing for an unpurchased product only when there is "substantial similarity" between the purchased and unpurchased products at issue. *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2015 WL

13

2125004, *10 (N.D. Cal. May 6, 2015); *Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492-BLF, 2014 WL 6657809, at *3 (N.D. Cal. Nov. 21, 2014). Defendant argues Plaintiff lacks standing to pursue claims on behalf of purchasers of the Elderberry Gummies—which he himself has not purchased—because the Products are not substantially similar. Mot. at 16. In response, Plaintiff argues that purchasers misled by the dosage representation on the Vitamin C Gummies, like himself, experience the same harm as purchasers of the Elderberry Gummies. Opp. at 18-19. For the reasons discussed below, the Court finds that Plaintiff has standing to bring his claims on behalf of the purchasers of Elderberry Gummies.

The Ninth Circuit has cautioned courts to "be careful not to employ too narrow or too technical an approach" when "determining what constitutes the same type of relief or the same kind of injury." *Armstrong v. Davis,* 275 F.3d 849, 867 (9th Cir.2001). In *Armstrong*, the Ninth Circuit considered a class action brought by prisoners and parolees suffering from six categories of disability: mobility impairments, hearing disabilities, visual disabilities, learning disabilities, mental retardation, and renal impairments. *Id.* at 854. Over a challenge by Defendant California Board of Prison Terms, the court held that disabled plaintiffs had standing to bring claims on behalf of a proposed class even where class members' disabilities and experienced harms were not identical. *Id.* at 867. The court explained: "the named plaintiffs all established the same injury: that the Board propounded a policy and engaged in a practice that denied them their rights under the ADA, and harmed them by preventing them from attending, communicating at, or comprehending parole and parole revocation hearings." *Id.* Accordingly, the Ninth Circuit held that the plaintiffs had standing on behalf of the class because the named plaintiffs and each of the class members "suffered from the same injurious conduct; each incurred the same injury; and each [was] seeking the same relief." *Id*.

Although the Ninth Circuit has not directly addressed "substantial similarity" for purposes of consumer fraud-based class actions, district courts, driven by *Armstrong*, have taken a broad

14

approach. *See, e.g., Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *4 (N.D. Cal. Mar. 13, 2014) (collecting cases). In so doing, Courts in this district have looked to similarities between the products, the claims brought, and the injuries consumers suffered. *See, e.g.*, *Romero,* 2016 WL 469370 at *10 ("Applying [*Armstrong's*] standard in the context of food mislabeling, courts in this district generally look at 'similarity in products, similarity in claims, [and] similarity in injury to consumers.'") (quoting *Ang*, 2014 WL 1024182, at *6); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (finding standing where plaintiffs "challeng[ed] the same kind of product (ice cream), based on largely the same ingredients, and asserting the same wrongful conduct applicable to a wide range within the product line."). For example, in *Romero*, this Court considered whether a plaintiff had Article III standing to bring various fraud and consumer claims flowing from allegedly misleading representations on the labels of thirty-two bread varieties. 2016 WL 469370 at *1, *10-*11. The product labels claimed the products contained "no artificial preservative, colors and flavors" when, in fact, they contained "azodicarbonamide ('ADA'), citric acid, sodium citrate, and/or ascorbic acid." *Id.* at *1. While plaintiff had purchased only four of defendant's thirty-two bread products, this Court found that she had standing, reasoning that "as long as a bread product is labeled 'no artificial preservative, colors and flavors' but contain[ed] one of the listed chemical ingredients, a consumer who purchases the product relying on that label suffers the same injury, regardless of whether the product is whole wheat bread or a cinnamon raisin bagel." *Id*. at 11. Relying on *Armstrong*, the Court explicitly rejected Defendant's argument that "the breads Plaintiff purchased—Honey Wheat, Whitewheat, 100% Whole Wheat, and 100% Whole Wheat with Honey—are insufficiently similar to the [unpurchased] products . . . including hot dog buns, cinnamon raisin bagels, English muffins, and low-calorie white bread." *Id*.

Defendant points to differences between the two Products, such as the amount of active ingredients, dosage, and packaging colors, to support its argument that the Vitamin C Gummies and

15

Elderberry Gummies are not substantially similar. Mot. at 15. But, as this Court held in *Romero*, the relevant question is not confined to whether the purchased product was whole wheat bread and the unpurchased product a cinnamon raisin bagel, 2016 WL 469370 at *11. Instead, the Court must consider the similarity of the claims and injuries flowing from the misrepresentations on each product. *See id.* at *10. Consumers, like Plaintiff, may be misled to believe that there is 750 mg of Vitamin C in each gummy based on the representation on the front label of the Vitamin C Gummies. *See supra* Section III.B. Similarly, consumers may be misled to believe that there is 50 mg of elderberry judice concentrate in each gummy based on the representation on the front label of the Gummies. The alleged misrepresentations, listing a specific quantity of a specific ingredient without indicating whether the quantity is per gummy or per serving, are nearly identically displayed on the Products. These facts are analogous to those in *Romero* where this Court allowed the plaintiff to bring claims related to potentially misleading representations on both purchased and unpurchased products because the alleged injury was practically identical.

Accordingly, the Court finds that Plaintiff has standing to bring claims on behalf of purchasers of the Elderberry Gummies because such consumers may be deceived in the same manner, and thus face the same injury, as Plaintiff was when he purchased Vitamin C Gummies. Defendant's motion to strike the claims related to the Elderberry Gummies is DENIED.

## IV. ORDER

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's motion WITH LEAVE TO AMEND. Plaintiff SHALL file an amended complaint no later than August 2, 2021. No new claims or parties may be added without leave of Court.

**IT IS SO ORDERED.**

Dated: July 1, 2021

*[signature]*

BETH LABSON FREEMAN
United States District Judge

16