Benjamin Heikali (SBN 307466)
E-mail: bheikali@faruqilaw.com
Joshua Nassir (SBN 318344)
E-mail: jnassir@faruqilaw.com
Ruhandy Glezakos (SBN 307473)
E-mail: rglezakos@faruqilaw.com
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

*Attorneys for Plaintiff Jeffrey Cimoli*

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| JEFFREY CIMOLI, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALACER CORP.,<br><br>Defendant. | Case No.: 5:20-cv-07838-BLF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO PARTIALLY DISMISS AND PARTIALLY STRIKE CLASS CLAIMS**<br><br>Hearing Date: January 13, 2022<br>Time: 9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge: Hon. Beth L. Freeman<br><br>Complaint Filed: November 5, 2020 |

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. STATEMENT OF FACTS ..................................................................................................... 1

III. LEGAL STANDARD............................................................................................................. 2

IV. ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3)) ....................................................... 2

V. ARGUMENTS........................................................................................................................ 2

    A. Plaintiff Can Pursue California and Pennsylvania Consumer Fraud Claims............... 2

    B. A Choice-of-Law Analysis At This Stage is Premature ............................................. 6

    C. The Court Can Apply Pennsylvania Law Nationwide................................................. 7

VI. CONCLUSION..................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................2

*Broomfield v. Craft Brew All., Inc.*,
  No. 17-cv-01027-BLF, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) ......................................6

*Bruno v. Quten Rsch. Inst.*,
  LLC, 280 F.R.D. 524 (C.D. Cal. 2011) ........................................................................8, 9, 11

*C.B. v. Sonora Sch. Dist.*,
  691 F. Supp. 2d 1123 (E.D. Cal. 2009)......................................................................................4

*Clay v. CytoSport, Inc.*,
  No. 3:15-cv-00165-L-AGS, 2018 WL 4283032 (S.D. Cal. Sept. 7, 2018) ..................... *passim*

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*,
  472 F. Supp. 2d 1183 (S.D. Cal. 2007).....................................................................................10

*Cullen v. Shutterfly Lifetouch, LLC*,
  No. 20-cv-06040-BLF, 2021 WL 2000247 (N.D. Cal. May 19, 2021) .....................................6

*David v. Baker*,
  129 F. App'x 358 (9th. Cir. 2005) .............................................................................................2

*Dukich v. IKEA US Retail LLC*,
  No. CV 20-2182, 2021 WL 131284 (E.D. Pa. Jan. 14, 2021) ...................................................7

*Forcellati v. Hyland's, Inc.*,
  876 F. Supp. 2d 1155 (C.D. Cal. 2012) ...........................................................................7, 8, 9

*Forcellati v. Hyland's, Inc.*,
  No. CV 12-1983-GHK, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)........................11, 12, 13

*Frezza v. Google Inc.*,
  No. 5:12-cv-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ...............................6

*Jou v. Kimberly-Clark Corp.*,
  No. C-13-03075 JSC, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) .......................................2

*Julian v. TTE Tech., Inc.*,
  No. 20-CV-02857-EMC, 2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) .................................5

*Langan v. Johnson & Johnson Consumer Cos.*,
  897 F.3d 88 (2d Cir. 2018)..........................................................................................................3

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ................................................................................... *passim*

*Morley v. Walker*,
    175 F.3d 756 (9th Cir. 1999) ............................................................................................. 2

*Morrow v. Ann Inc.*,
    No. 16-CV-3340 (JPO), 2017 WL 363001 (S.D.N.Y. Jan. 24, 2017) ................................ 4

*Mosqueda v. Am. Honda Motor Co.*,
    443 F. Supp. 3d 1115 (C.D. Cal. 2020) ............................................................................. 6

*Muir v. Nature's Bounty (DE), Inc.*,
    No. 15 C 9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018) ........................................ *passim*

*Padilla v. Whitewave Foods Co.*,
    No. LA CV18-09327-JAK, 2019 WL 4640399 (C.D. Cal. July 26, 2019) ....................... 7, 8

*Potter v. Chevron Prods. Co.*,
    No. 17-cv-06689-PJH, 2018 WL 4053448 (N.D. Cal. Aug. 24, 2018) ............................. 6

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) ............................................................................................. 2

*Short v. Hyundai Motor Co.*,
    No. C19-0318JLR, 2020 WL 6132214 (W.D. Wash. Oct. 19, 2020) ............................... 4

*Singleton v. Jas Auto. LLC*,
    378 F. Supp. 3d 334 (E.D. Pa. 2019) ............................................................................. 10

*Wallace v. SharkNinja Operating, LLC*,
    No. 18-cv-05221-BLF, 2020 WL 1139649 (N.D. Cal. Mar. 9, 2020) ............................... 6

*Zapata Fonseca v. Goya Foods Inc.*,
    No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ............................ 7

**Other Authorities**

Fed. R. Civ. P. 8 .......................................................................................................................... 2

Fed. R. Civ. P. 8(d)(2)-(3) .......................................................................................................... 4

Rule 12(b)(6) ............................................................................................................................... 2

iii
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO PARTIALLY DISMISS AND
PARTIALLY STRIKE CLASS CLAIMS

## I.   INTRODUCTION

The Court has requested the Parties to answer two questions: Can Plaintiff advance consumer fraud claims under two different state's laws and, if not, which state's law should be applied under choice-of-law rules?

The answer to the first question is yes. Courts routinely allow plaintiffs to pursue consumer protection claims of multiple states simultaneously. The Federal Rules also explicitly allow pursuing claims in the alternative. The complaint clearly demonstrates that Plaintiff has adequately alleged a valid claim under Pennsylvania's and California's consumer protection statutes. This is all Plaintiff needs to proceed with these claims at this stage.

The answer to the second question is that Plaintiff can bring the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") on behalf of non-Pennsylvania residents nationwide. While choice-of-law analysis would be premature and is best reserved for the class certification stage, as it is a fact-heavy inquiry which requires a fully-developed factual record to properly analyze, applying California's choice-of-law rules demonstrates that nationwide application of the Pennsylvania UTPCPL is proper.

## II.   STATEMENT OF FACTS

Plaintiff Jeffrey Cimoli ("Plaintiff") brings this putative class action challenging Defendant Alacer Corp.'s ("Defendant") false advertising of its dietary immune support supplements, which misleads consumers about the dosage of Defendant's Immune Support Vitamin C Gummies and its Elderberry Gummies (individually, the "Product" and collectively, the "Products"). First Amended Class Action Complaint ("FAC") ¶¶ 1-5.

Based on these allegations, Plaintiff seeks to represent similarly situated members of a California and Nationwide class, alleging claims for, *inter alia*, violations of California consumer protection statutes and the UTPCPL. *Id.* ¶¶ 51-113.

On July 1, 2021, this Court issued its Order Granting In Part and Denying In Part Motion to Dismiss (ECF No. 17) ("Order"), which sustained many of Plaintiff's claims, but asked the parties to consider "whether a Plaintiff may advance consumer fraud claims under two different state's laws and, if not, which state's law should be applied under choice-of-law rules." Order at 6.

1

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO PARTIALLY DISMISS AND PARTIALLY STRIKE CLASS CLAIMS

On August 2, 2021, Plaintiff filed his FAC, adding allegations regarding Defendant's extensive ties with Pennsylvania. Specifically, Defendant maintains its principal place of business in Carlisle, Pennsylvania, where Defendant maintains a 130,000 square foot facility with a 10,000 square foot office space. FAC ¶ 18. Defendant also employed a third-party graphic design firm for the design of the Products' packaging, that is located in Blue Bell, Pennsylvania. *Id.* Further, Defendant employs a project manager involved in the packaging of the Products, who is located in Conshohocken, Pennsylvania. *Id.*

## III.     LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6), it is the defendant's burden to show that the plaintiff cannot state a claim for relief. *David v. Baker*, 129 F. App'x 358, 360 (9th. Cir. 2005). The court "must accept as true" all well pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). To survive a motion to dismiss, the plaintiff must only allege enough facts to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle it to relief." *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

## IV.     ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3))

Whether Plaintiff can pursue claims under both California's and Pennsylvania's consumer protection statutes, and if not, which state's law should be applied under choice-of-law rules.

## V.     ARGUMENTS

### A.     Plaintiff Can Pursue California and Pennsylvania Consumer Fraud Claims

Defendant urges the Court to dismiss Plaintiff's Pennsylvania UTPCPL claim because his purchase occurred in California and Plaintiff "cannot bring his claim under the consumer protection laws of two states at once." Defendant's Motion to Partially Dismiss and Partially Strike Class Claims ("Mot.") at 2. However, Defendant's argument is contrary to Fed. R. Civ. P. 8, as well as numerous courts' well-reasoned decisions that a plaintiff can pursue claims under two states' consumer protection statutes. *See e.g., Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158,

at *11 (N.D. Cal. Dec. 10, 2013) ("[T]he Court is aware of no case that holds that an individual plaintiff, *under choice of law principles applied on a Rule 12(b)(6) motion*, cannot *simultaneously*, or in the alternative, bring two causes of action under different states' consumer protection statutes.") (emphasis added).

For the Court to permit Plaintiff's UTPCPL claim to proceed at the pleading stage, Plaintiff need only show that he has *constitutional* standing (i.e., that he suffered an Article III injury based on Defendant's advertising) to pursue the claim. *Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *7 (N.D. Ill. Aug. 1, 2018) is instructive in this regard. In *Muir*, two Illinois plaintiffs alleged false advertising claims against a supplement manufacturer under the consumer protection statutes of California, Michigan, Pennsylvania, and Illinois. *Id.* at *1. The Court rejected the defendant's motion to strike the multi-state class, holding that the Illinois plaintiffs "have constitutional standing to assert all the claims in the Second Amended Class Complaint—even those that are premised on the laws of states where their injuries did not occur" because "[t]hey allege that Defendants injured them by deceptively labeling the products [plaintiffs] purchased, and they ask the court to redress their injuries by ordering Defendants to pay money." *Id.* at *6-7 (explaining that the "weight of recent authority points" to allowing a plaintiff with only constitutional standing to proceed past the pleading stage).

Rather, the court "postpone[d] its decision on the issue" of whether plaintiffs can maintain a nationwide class to class certification, "until after Plaintiffs have had an opportunity to take discovery." *Id.* at *9. Other courts are in accord. *See e.g., Langan v. Johnson & Johnson Consumer Cos.,* 897 F.3d 88, 91, 93 (2d Cir. 2018) (holding, in a case where a Connecticut plaintiff brought claims that the defendant's "labeling violated the Connecticut Unfair Trade Practices Act (CUTPA), as well as the state consumer protection laws of twenty other states" that "as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3)[.]").

To be candid, the *Muir* court did recognize that some courts, but not the "recent weight of the

authority," would require Plaintiff to also demonstrate *statutory* standing under the UTPCPL. Even if the Court chooses to take this approach, Plaintiff has demonstrated as such. The Court already found Defendant's conduct to be plausibly deceptive under California's consumer protection claim, the UTPCPL is no different. *Morrow v. Ann Inc.*, No. 16-CV-3340 (JPO), 2017 WL 363001, at *5 (S.D.N.Y. Jan. 24, 2017) (holding that Plaintiff plausibly alleged a claim under the UTPCPL when alleging that, "[a]s above regarding the California claims," "the product she purchased was worth less than the amount she paid and that she would not have purchased it but for [defendant's] alleged misrepresentation that it had been marked down from a higher price.")

Further, the fact that Plaintiff is not a Pennsylvania resident will provide no obstacle to bringing a claim under the UTPCPL given the FAC's allegations regarding the connection between Defendant's conduct and Pennsylvania, a crucial distinction which Defendant wholly ignores on this inquiry. FAC ¶ 18 ("Defendant also employed a third-party graphic design firm in the design of the Products' packaging, that is located in Blue Bell, Pennsylvania. […] Further, Defendant employs a project manager involved in the packaging of the Products, who is located in Conshohocken, Pennsylvania."); *cf. Muir*, 2018 WL 3647115, at *7, n.5 ("Pennsylvania's Uniform Trade Practices and Consumer Protection Law […] can apply to misconduct or injuries that occurred elsewhere, provided the entity alleged to have committed that misconduct was headquartered within the state."). This outcome is not unique. *Short v. Hyundai Motor Co.*, No. C19-0318JLR, 2020 WL 6132214, at *5 (W.D. Wash. Oct. 19, 2020) (holding that "non-California Plaintiffs have standing to pursue claims under the UCL, FAL, and CRLA[sic]", *in addition to other states' consumer protection statutes*, when alleging that the defendants were headquartered in California and the relevant conduct emanated from California) (collecting cases holding same).

Finally, as a matter of civil procedure, Plaintiff is also permitted to bring two simultaneous consumer protection statutes because the Federal Rules establish that "[a] party may set out 2 or more statements of a claim or defense alternatively" even if they are inconsistent. Fed. R. Civ. P. 8(d)(2)-(3); *see also C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1123, 1154 (E.D. Cal. 2009) (rejecting defendants' argument that Plaintiff cannot "sue under both" types of civil rights statutes, and "must

be required to elect one remedy," holding that plaintiff could seek relief in the alternative under Rule 8). Defendant's authorities, which are factually and legally inapposite, are addressed below.

Defendant primarily relies on *Julian v. TTE Tech., Inc.*, No. 20-CV-02857-EMC, 2020 WL 6743912 (N.D. Cal. Nov. 17, 2020), but *Julian* is inapposite. In *Julian*, the court refused to allow the plaintiffs to proceed with their "alternative theory that California law should apply to a California class and New Jersey law to a New Jersey class" because the plaintiffs had "failed to show how discovery may change the outcome" of the claims. *Id.* at *10. As demonstrated above, discovery has, and will likely continue to, demonstrate Defendant's ties to Pennsylvania in regard to the alleged deceptive conduct at issue. Further, the *Julian* court noted that "Plaintiffs have cited no authority authorizing a party to bring, *e.g.*, an unjust enrichment claim under California law and a separate unjust enrichment claim under Georgia law based on the same underlying facts." *Id.* Plaintiff has provided a number of cases authorizing plaintiffs to bring claims under the consumer protection statutes of both their home state, where the purchase occurred, and in other states based on the same underlying facts.

Defendant's other authorities are equally unavailing. For example, in *Shuman v. SquareTrade Inc.*, the court found that the plaintiff could not maintain his UCL claim because the UCL requires the "transaction in which the misrepresentation occurred" to be in California. No. 20-cv-02725-JCS, 2020 WL 7458001, at *6 (N.D. Cal. Dec. 18, 2020). Here, as this Court and other courts have recognized, the UTPCPL "can apply to misconduct or injuries that occurred elsewhere, provided the entity alleged to have committed that misconduct was headquartered within the state." *Muir*, 2018 WL 3647115, at *7, n.5 (citing *Danganan v. Guardian Prot. Servs.*, 645 Pa. 181, 191–92 (2018)); Order at 5 (holding that "the UTPCL may apply extraterritorially" as the Pennsylvania Supreme Court found "that a non-resident may bring a UTPCPL claim against a *business headquartered in Pennsylvania even if the transaction itself took place out-of-state*.") (citing *Danganan*, 645 Pa. at 186). Thus, not only should Plaintiff's UTPCPL claim proceed as he has constitutional standing to bring the claim, but he has demonstrated statutory standing as well.

On the issue of whether Plaintiff can advance consumer fraud claims under two different

5

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO PARTIALLY DISMISS AND PARTIALLY STRIKE CLASS CLAIMS

state's laws, Defendant also relies on a few authorities which miss the mark, as they deal with the circumstance where a plaintiff seeks to apply the law of *only one* state to multiple states. *See e.g., Potter v. Chevron Prods. Co.*, No. 17-cv-06689-PJH, 2018 WL 4053448, at *10-12 (N.D. Cal. Aug. 24, 2018) (declining to apply California consumer protection claims nationwide); *Frezza v. Google Inc.*, No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *5–6 (N.D. Cal. Apr. 22, 2013) (same); *Mosqueda v. Am. Honda Motor Co.,* 443 F. Supp. 3d 1115, 1124 (C.D. Cal. 2020) (same).

Because Plaintiff can bring claims under California and Pennsylvania's consumer protection statutes simultaneously, the Court need not engage in a choice-of-law analysis as it recognized in its Order. Order at 6 ("The remaining issues before the Court are whether a Plaintiff may advance consumer fraud claims under two different state's laws and, ***if not***, which state's law should be applied under choice-of-law rules.") (emphasis added).

### B.  A Choice-of-Law Analysis At This Stage is Premature

To the extent the Court believes a choice-of-law analysis is necessary, choice-of-law rules do not prohibit the Court from adjudicating this Action under both California and Pennsylvania law. First, courts, including this Court, routinely recognize that conducting a choice-of-law analysis at the pleading stage would be premature. *Cullen v. Shutterfly Lifetouch, LLC*, No. 20-cv-06040-BLF, 2021 WL 2000247, at *9 (N.D. Cal. May 19, 2021) (Freeman, J.) ("The Court agrees" that a choice-of-law determination is "not appropriate for disposition at this early stage of the case."); *Wallace v. SharkNinja Operating, LLC*, No. 18-cv-05221-BLF, 2020 WL 1139649, at *15 (N.D. Cal. Mar. 9, 2020) (Freeman, J.) (declining to strike nationwide class allegations at pleading stage, instructing that "as *Mazza* itself demonstrates, a detailed and fact-intensive inquiry is necessary to determine the substantive law applicable to class members' claims. The Court is also mindful that dismissing or striking class allegations at the pleading stage is rare.")

Contrary to Defendant's assertion, this Court's decision in *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017), which comes before its decision in *Cullen* and *Wallace*, does not warrant a different outcome. In *Broomfield*, this Court found that it "should address ***standing*** prior to class certification," ***not*** a choice-of-law analysis. *Id.* at *14 (emphasis added). The Court did not even answer the question on standing, noting that it "need not

decide whether the named plaintiffs in this case, all of whom are California residents, have standing to bring claims on behalf of out-of-state members of the nationwide class for violations of their states' laws since such claims are simply not alleged in the Consolidated Complaint." *Id.* Notably, the Court also pushed the inquiry to a later stage, claiming that defendant could "rais[e] these issues again at class certification." *Id.* at *15-16.

Other courts are in accord with this Court's decision in *Cullen* and *Wallace*. *See Dukich v. IKEA US Retail LLC*, No. CV 20-2182, 2021 WL 131284, at *5 (E.D. Pa. Jan. 14, 2021) (holding that the "court will be in a better position to determine" the question of whether choice of law rules preclude nationwide application of the UTPCPL to non-Pennsylvania residents at the class certification stage); *Padilla v. Whitewave Foods Co.*, No. LA CV18-09327-JAK (JCx), 2019 WL 4640399, at *17 (C.D. Cal. July 26, 2019) ("The decisions deferring a ruling on this issue are more persuasive. *Mazza* is best addressed in the context of a motion to certify a class of more than California consumers. Here, the development of a factual record during discovery may inform the choice of law analysis."); *see also Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1155, 1159 (C.D. Cal. 2012) (holding that courts "rarely undertake choice-of-law analysis to strike class claims at this early stage in litigation" and that "[u]ntil the Parties have explored the facts in this case, it would be premature to speculate about whether the differences in various states' consumer protection laws are material in this case."); *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *3 (N.D. Cal. Sept. 8, 2016) ("Defendant's reliance upon *Mazza* is unavailing. This Court has consistently declined to apply *Mazza* at the motion to dismiss stage to strike nationwide class allegations.")

Thus, the Court should wait until class certification (the stage the *Mazza* court conducted the choice of law analysis), where the Parties will have a complete, factual record in front of the Court so that it can more properly conduct a fully-informed choice-of-law analysis. As demonstrated below, the information uncovered during discovery will be highly relevant to any future choice-of-law analysis.

### C.     The Court Can Apply Pennsylvania Law Nationwide

To the extent the Court finds it needs to apply California choice-of-law principles,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO PARTIALLY DISMISS AND PARTIALLY STRIKE CLASS CLAIMS

Pennsylvania law should apply nationwide. As Defendant recognizes, if the Court decides to engage in this inquiry, it should consider the three-step governmental interest inquiry. *Bruno v. Quten Rsch. Inst.*, LLC, 280 F.R.D. 524, 539 (C.D. Cal. 2011).

Under "California's choice of law rules, the class action proponent," which is Plaintiff in this case, "bears the initial burden to show that [the proposed state's laws] has 'significant contact or significant aggregation of contacts' to the claims of each class member." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589–90 (9th Cir. 2012) (quoting *Wash. Mut. Bank v. Superior Court*, 24 Cal.4th 906, 921 (Cal. 2001)). "Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate" that the foreign state's law "should apply to class claims.'" *Id.* at 590.

Here, Pennsylvania undoubtedly has significant contacts with the claims of the putative nationwide class given that Defendant: (1) maintains its principal place of business in Pennsylvania; (2) maintains a 130,000 square foot facility with a 10,000 square foot office space; (3) employs a third-party graphic design firm in the design of the Products' packaging located in Pennsylvania; and (4) employs a project manager involved in the packaging of the Products that is located in Pennsylvania. FAC ¶¶ 10, 18; *see also Clay v. CytoSport, Inc.*, No. 3:15-cv-00165-L-AGS, 2018 WL 4283032, at *14 (S.D. Cal. Sept. 7, 2018) (finding that California had sufficient significant contacts to shift burden of proving governmental interest test to defendant, the party opposing nationwide application, when the defendant "is incorporated and headquartered in California, its principal place of business is in California, the final decisions regarding representations made on product labels were made in California, and many of the products were produced in California."); *Forcellatti*, 876 F. Supp. 2d at 1160 (finding that nationwide "application of California law poses no constitutional concerns" when the defendants were "headquartered in Los Angeles, California.").

Given that these facts were only gained through Defendant's document production, which is an ongoing endeavor, Plaintiff's previous argument that a choice-of-law analysis is premature is only further proven. Additional facts relating to Defendant's contacts in Pennsylvania, which is relevant to the choice-of-law analysis, will likely be revealed from additional document production and future deposition testimony of Defendant's employees. *Padilla*, 2019 WL 4640399, at *17 ("*Mazza* is best

1  addressed in the context of a motion to certify a class of more than California consumers. Here, the
2  development of a factual record during discovery may inform the choice of law analysis.")

3  Turning to the three-step governmental interest test, Defendant incorrectly states that it is
4  Plaintiff's burden to demonstrate that the test warrants nationwide application of Pennsylvanian law.
5  As demonstrated above, Plaintiff, the "class action proponent," met his "initial burden to show that"
6  Pennsylvania has significant contact to the claims of the putative nationwide class. *Mazza*, 666 F.3d
7  at 589-90. Thus, "Defendant bears the burden to show that the 'governmental interest approach'"
8  favors applying foreign law (i.e., the law of non-Pennsylvanian states) to the putative nationwide class
9  members. *Clay*, 2018 WL 4283032, at *15 (citing *Mazza*, 666 F.3d at 590).

10  The first question in this inquiry is "whether the relevant law is the same or different across
11  the affected jurisdictions," and whether these differences are material to "'the facts of this case.'"
12  *Bruno*, 280 F.R.D. at 539 (quoting *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010)). If
13  the Court finds that Defendant failed to carry its burden to demonstrate that the relevant laws are
14  materially different, the inquiry ends here. *Id.* at 540. Indeed, Defendant failed to carry this burden.
15  While Defendant argues that there are differences in state law that purportedly make a nationwide
16  class unmanageable, and provides case law demonstrating purported differences, Defendant fails to
17  demonstrate how or why any purported differences are ***material to this case***. Nowhere does Defendant
18  discuss the facts of this case or even attempt to explain how, under the differing laws of each state,
19  these facts may lead to material differences in outcome. As recognized in *Mazza*, "[t]he fact that two
20  or more states are involved does not itself indicate that there is a conflict of law problem. A problem
21  only arises if differences in state law are ***material***, that is, if they make a difference in ***this*** litigation."
22  666 F.3d at 590 (emphasis added). Indeed, the choice-of-law analysis is fact and case specific, as
23  "each prong of California's 'governmental interests' test based on the facts and circumstances of *this*
24  case, and *this* Plaintiff's allegations." *Forcellati*, 876 F. Supp. 2d at 1161 (emphasis in original).
25  Defendant failed to meet its burden by pointing to the analysis conducted in other cases. *Id.*
26  ("[C]hoice-of-law analyses is a case-and fact-specific inquiry, Defendants cannot meet their burden
27  merely by citing cases in which other defendants have met this burden in factually different
28

circumstances.")

For example, Defendant points to a purported difference in scienter between California and Pennsylvania law, but *applied to the facts and law of this case*, scienter will pose no obstacle towards Plaintiff prevailing on these claims as "Plaintiff is not required to plead the elements of common law fraud or do so with particularity under Rule 9(b) to support a UTPCPL claim under the catchall provision." *Singleton v. Jas Auto. LLC*, 378 F. Supp. 3d 334, 351 (E.D. Pa. 2019); *cf.* FAC ¶105(d) (alleging violation of the UTPCPL under the catchall provision). Alternatively, if discovery unveils that Defendant placed the misrepresentations on the Products at issue knowingly, scienter would not be an obstacle for that reason. *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1200 (S.D. Cal. 2007) (holding that "laws are not 'materially different' [when] each leads to the same result in this case.")

In any event, at class certification, minor variations between the various' states consumer protection statutes, to the extent they even exist, will be ultimately inconsequential to the resolution of the case. Courts recognize this fact. For example, in *Muir*, the defendant argued that the "consumer fraud laws of Illinois, California, Michigan, and Pennsylvania" were materially different as they "include different statutes of limitations, different rules regarding the availability of punitive damages, and different requirements with regard to a defendant's intent (or lack thereof) to induce reliance, among other things." *Muir*, 2018 WL 3647115, at *8. The court rejected this argument, finding that "[a]ssuming Defendants' analysis on these matters is correct, that argument ignores the core, overlapping elements" in the consumer protection statutes as they all "in one phrasing or another, unfair, fraudulent, or deceptive practices in the course of trade or commerce." *Id.* (citing, *inter alia*, California and Pennsylvania's consumer protection statutes).

Indeed, at class certification, minor variances between the consumer protection laws of Pennsylvania and the various states will pose no issue to national certification of a class under the UTPCPL as "[a]ll of the proposed class members' claims will thus rise or fall on the question of whether the labeling on the products Plaintiffs' purchased was, in fact, false or misleading. That is a common question capable of generating a common answer that 'will resolve an issue that is central

to the validity of each one of the claims in one stroke.'" *Muir*, 2018 WL 3647115, at *8 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Thus, any differences between the various states' consumer protection statutes will not be material enough to make a difference in this litigation. Because the consumer protection statutes of the various states are not materially different, this "Court does not proceed to the other two steps in the governmental interest test." *Bruno*, 280 F.R.D. at 540.

Lastly, to the extent the Court finds that there are material differences in law, the Court should next consider whether Defendant met its burden of establishing that "each jurisdiction's interest in the application of its own law to the particular circumstances to determine whether a true conflict exists" and "if a true conflict exists, weigh the strengths of the interests to determine which state's interest would be more impaired by not having its law applied." *Id.* at 539.

Defendant primarily points to *Mazza* to argue that its connections to Pennsylvania do not warrant the nationwide application of Pennsylvania law because any interest in applying Pennsylvania law is outweighed by the interest of the various other states in applying their own laws to transactions within their borders. Mot. 7-8 (citing *Mazza*, 666 F.3d at 590). First, it is not enough for Defendant to assert that each foreign state has an overriding interest in applying its own laws. *Forcellati v. Hyland's, Inc.* ("*Forcelatti II*"), No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *3 (C.D. Cal. Apr. 9, 2014) ("the broad statement that 'each of the 50 states has an interest in … protecting its consumers and setting limits on when businesses may be sued … is not enough"). Indeed, Defendant "fail[s] to demonstrate the degree to which other states' interests would be impaired by the application of" Pennsylvania law. *Id.*

Similarly, in *Clay*, the defendant "argue[d] that a nationwide class cannot be certified because California law does not apply to out-of-state putative class members, and that each class member's own state law should apply, thus precluding a finding that common issues predominate for a nationwide class." *Clay*, 2018 WL 4283032, at *14. As with Defendant in this case, the defendant in *Clay* "does not analyze the state interests under the circumstances of this particular case, but points to the findings made in *Mazza*" which "observed that in the false advertising context, '[e]very state has an interest in having its law applied to its resident claimants[.]'" *Id.* at *16. (citing *Mazza*, 666

F.3d at 591-92).

This is not enough. The flaw in Defendant's analysis is that the factual situation in *Mazza* is different than the one in this case. *Forcellati II*, 2014 WL 1410264, at *3 ("Rather than consider the facts of this case, Defendants simply state that controlling law dictates that the interests of each of the consumers' home states are most impaired by the application of California law." (citation and quotation marks omitted). Applying the facts of this case warrants a different outcome. In *Mazza*, the defendant "was headquartered in California and its advertising agency, which produced the allegedly misleading materials, was located in California. However, the advertising campaign, as it pertained to the relevant representations, was 'very limited,' and it was 'likely that many class members were never exposed to the allegedly misleading advertisements.'" *Clay*, 2018 WL 4283032, at *16 (citing *Mazza*, 666 F.3d at 595). Specifically, "whether a purchaser was exposed to the allegedly misleading statement depended in large part on whether the ultimate seller chose to present it." *Id.* "Accordingly, 'the communication of the advertisements to the claimants and their reliance thereon in purchasing vehicles--took place in the various foreign states, not in California.'" *Id.* (citing *Mazza*, 666 F.3d at 594). In short, the alleged misrepresentations were controlled largely by the decision-making of the various sellers, which were spread out across the country.

Here, the outcome is different to the extent the decision-making predominantly emanates from Pennsylvania, which is likely the case. *Id.* at *17 (distinguishing *Mazza* when "[i]n the pending case, the alleged misconduct occurred entirely in California. [] All allegedly false representations were made on Defendant's product labels, and all products were sold with labels. All final decisions regarding the labels were made and approvals were given in California, where Defendant is incorporated and maintains its principal place of business. Defendant distributed its products nationwide."). Similarly, here, Plaintiff alleges that the misconduct occurred entirely in Pennsylvania, including the placing of the representations on the Products', the final decisions regarding these labels, and the principal place of Defendant's business. The court's determination in *Clay* did not change despite the nationwide distribution of the product and "[t]he fact that some products were ***purchased in one state rather than another should be immaterial to the choice of law*** under the

facts of the present case, because the alleged misconduct occurred entirely in California." *Id*. (emphasis added); *see also Forcellati II*, 2014 WL 1410264, at *3-4 (rejecting defendant's assertion that "controlling law dictates that the interests of each of the consumers' home states are most impaired by application of California law").

Further, while some courts have found that states often have an interest in applying their own consumer protection law for consumer transactions made in their own states, courts routinely recognize that states have an interest in regulating the conduct of its corporation, in particular for false and misleading advertising. *Clay*, 2018 WL 4283032, at *16 ("a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders") (citing *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97–98 (2010)).

For these reasons, "Defendants have provided no substantive, fact-specific analysis as to whether" Pennsylvania, where Defendant is "headquartered and presumably disseminated a good portion of the allegedly false advertising—or the states where the sales occurred have the predominant interest here." *Forcellati II*, 2014 WL 1410264, at *3-4 ("As such, Defendants' analysis under the comparative impairment prong of the governmental interest analysis test is insufficient to carry their burden.")

Thus, given that "Defendant points to no state with a greater interest in enforcing its laws under the facts of this case", applying the UTPCPL "nationwide does not impede other states in applying their policies, whether through consumer-friendly or business-friendly legislation, to the conduct that occurs within their borders." *Clay*, 2018 WL 4283032, at *17.

For these reasons, the second and third prong of California's governmental interest test does not warrant striking Plaintiff's nationwide allegations.

## VI.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion in its entirety and refuse to strike Plaintiff's nationwide class allegations.

Dated: November 8, 2021                                         **FARUQI & FARUQI, LLP**

                                                                By: */s/ Benjamin Heikali*

13

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO PARTIALLY DISMISS AND PARTIALLY STRIKE CLASS CLAIMS

Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
Ruhandy Glezakos (SBN 307473)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone: 424.256.2884
Fax: 424.256.2885
E-mail:  bheikali@faruqilaw.com
         jnassir@faruqilaw.com
         rglezakos@faruqilaw.com