**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JEFFREY CIMOLI,<br><br>             Plaintiff,<br><br>       v.<br><br>ALACER CORP.,<br><br>             Defendant. | Case No. 20-cv-07838-BLF<br><br>**ORDER GRANTING MOTION TO PARTIALLY DISMISS AND PARTIALLY STRIKE CLASS CLAIMS**<br><br>[Re: ECF No. 47] |

Before the Court is Defendant Alacer Corp.'s ("Alacer") Rule 12(b)(6) Motion to Partially Dismiss and 12(f) Motion to Partially Strike Plaintiff Jeffrey Cimoli's ("Cimoli") Class Claims in this class action related to allegedly misleading labeling of Alacer's dietary supplement Gummies. Plaintiff brings various claims on behalf of a class of California residents (the "California Class") under California law, including California's Unfair Competition Law ("UCL"). Further, Cimoli brings one claim on behalf of a Nationwide Class under Pennsylvania's unfair competition law—the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). At issue in Alacer's Motion is whether, under choice-of-law principles, Cimoli can simultaneously bring claims under both California and Pennsylvania unfair competition statutes—and if not, which state's law applies. Alacer moves to dismiss Cimoli's Pennsylvania law claim on the basis that he cannot bring claims under both states' statutes under choice-of-law principles, and California law applies. Further, Alacer moves to strike Cimoli's Nationwide Class allegations, since the only claim he brings on behalf of the Nationwide Class is the Pennsylvania claim. Cimoli opposes, arguing that nothing bars him from bringing claims under both states' statutes.

Based on the reasoning below, the Court GRANTS Alacer's Motion.

## I. BACKGROUND

Alacer manufactures and sells the dietary supplement gummies at the heart of this suit. *See* First Amended Complaint ("FAC"), ECF No. 45 ¶ 19. Alacer is a California corporation with its principal place of business in Pennsylvania. *See* FAC, ECF No. 45 ¶ 18. Cimoli is a California resident who purchased a bottle of Alacer's Emergen-C Immune Support 750 mg Vitamin C Gummy Orange, Tangerine, and Raspberry Product on or around June 2020 from a Target store in San Jose, California. *See id.* ¶ 16.

Cimoli's claims stem from the fact that in purchasing the Product, he saw and relied on representations on the front label indicating that it contains "750 mg Vitamin C" and "45 Gummies." *See id.*; *see also id.* ¶¶ 20–39. Based on these representations, Cimoli believed the bottle of Gummies he purchased contained 45 Gummies that each contained 750 mg of Vitamin C, when in fact three Gummies were required to obtain the 750 mg of Vitamin C indicated on the front label. *See id.* ¶ 16; *see also id.* ¶¶ 20–39. Plaintiff alleges he was misled by the label. *See id.* ¶ 16. Plaintiff sues on the basis of alleged misrepresentations on the labels of Alacer's Emergen-C Gummies and its Elderberry Gummies (the "Products"). *See id.* ¶ 2.

Cimoli brings claims on behalf of a California Class and a Nationwide Class. On behalf of the California Class, Plaintiff brings claims for (1) violation of California's UCL; (2) violation of California's Consumer Legal Remedies Act ("CLRA"); (3) violation of California's False Advertising Law ("FAL"); (4) unjust enrichment/quasi-contract; and (5) common law fraud. *See id.* ¶¶ 51–100. On behalf of the Nationwide Class, Cimoli brings a claim for violation of Pennsylvania's UTPCPL. *See id.* ¶¶ 101–13.

Alacer moves to dismiss Cimoli's claim under the UTPCPL because under choice-of-law principles, (1) Cimoli is barred from asserting consumer fraud claims under the laws of California and Pennsylvania at the same time and (2) California law governs. *See* Motion, ECF No. 47. Further, Alacer moves to strike Cimoli's Nationwide Class allegations, since the only claim Cimoli brings on behalf of the Nationwide Class is the UTPCPL claim, which Alacer argues should be dismissed. *Id.* Cimoli opposes, arguing that (1) choice-of-law principles do not bar him from bringing consumer fraud claims under the laws of California and Pennsylvania simultaneously and

2

1  (2) even if they did, this issue is better resolved at the class certification stage, rather than on a
2  motion to dismiss. *See* Opposition, ECF No. 54.

3        The Court previously deferred ruling on Alacer's Motion to Dismiss Cimoli's UTPCPL
4  claim in the initial Complaint, which Alacer brought on similar grounds. *See* Order Granting In Part
5  and Denying In Part Motion to Dismiss ("Initial Complaint Order"), ECF No. 42 at 4–6. In that
6  Order, the Court found that the UTPCPL "may apply extraterritorially," based on the Pennsylvania
7  Supreme Court's decision in *Danganan v. Guardian Protection Services*, 645 Pa. 181, 186 (2018).
8  *See* Initial Complaint Order, ECF No. 42 at 5. However, the Court noted that the Pennsylvania
9  Supreme Court cautioned that the reach of the UTPCPL is still limited by "jurisdictional principles
10 and choice-of-law rules." *See id.* at 5 (citing *Danganan*, 645 Pa. at 194–95). Accordingly, the Court
11 deferred on ruling on Cimoli's UTPCPL claim until after Cimoli amended his pleading, noting the
12 following: "The remaining issues before the Court are whether a Plaintiff may advance consumer
13 fraud claims under two different state's laws and, if not, which state's law should be applied under
14 choice-of-law rules." *Id.* at 6.

15       In the Initial Complaint, Cimoli alleged that Alacer maintained a 130,000 square foot facility
16 in Pennsylvania. *See* Complaint, ECF No. 1 ¶ 18. In the First Amended Complaint, Cimoli added
17 further allegations regarding Alacer's connections to the state—namely, (1) Alacer's Pennsylvania
18 facility includes a 10,000 square foot office space; (2) Alacer employed a third-party graphic design
19 firm located in Pennsylvania for the design of the Products' packaging; and (3) Alacer employs a
20 project manager located in Pennsylvania who is involved in the packaging of the Products. *See*
21 FAC, ECF No. 45 ¶ 18.

22       Per the Court's prior order, two primary questions are before the Court in considering
23 Alacer's Motion: (1) whether a Plaintiff may advance consumer fraud claims under two different
24 state's laws and (2) if not, which state's law should be applied under choice-of-law rules. *See* Initial
25 Complaint Order, ECF No. 42 at 6. Both parties endeavor to answer these questions in their briefing.
26 Alacer asserts that "the answer to the first question is no, and the answer to the second question is
27 California." Motion, ECF No. 47 at 2. In response, Cimoli asserts that "[t]he answer to the first
28 question is yes," and "[t]he answer to the second question is that Plaintiff can bring the [UTPCPL

claim] on behalf of non-Pennsylvania residents nationwide." Opposition, ECF No. 54 at 1.

## II. LEGAL STANDARD

### A. 12(b)(6) Motion – Failure to State a Claim

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a plaintiff has stated a claim, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy

favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F.Supp.2d 1167, 1170 (N.D. Cal. 2010). Motions to strike "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. . . . If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id.*

"There is a split in this District as to whether a motion to strike class action allegations may be entertained at the motion to dismiss stage." *Ogala v. Chevron Corp.*, No. 14–cv–173–SC, 2014 WL 4145408, at *2 (N.D. Cal. Aug. 21, 2014) (collecting cases). Even those courts that have considered such a motion early in the proceedings "have applied a very strict standard to motions to strike class allegations on the pleadings." *Id.* "Only if the court is convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed may the allegations be stricken." *Id.* (internal quotation marks and citation omitted). Thus, even if a motion to strike class allegations is considered at the pleading stage, it may only be granted under "rare circumstances" where "the complaint demonstrates that a class action cannot be maintained on the facts alleged." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C–13–1803 EMC, 2014 WL 1048710, at *3 (N.D. Cal. Mar. 14, 2014).

## III. DISCUSSION

### A. 12(b)(6) Motion

Alacer's argues that Cimoli fails to state a claim under the UTPCPL because choice of law principles prevent a party from asserting claims under California and Pennsylvania unfair competition laws simultaneously—even at the pleading stage—and the choice of law analysis indicate that applying California law is proper. *See* Motion, ECF No. 47 at 2–8. In response, Cimoli argues that choice of law does not prevent him from bringing unfair competition claims under California and Pennsylvania law; even if it did, choice of law would be premature at this stage; and the choice of law analysis indicates that applying Pennsylvania law is proper. *See* Opposition, ECF No. 54 at 2–13. The Court considers each issue in turn.

**1. Whether a Plaintiff May Advance Consumer Fraud Claims Under Two Different States' Consumer Protection Laws**

a. At the Pleading Stage

The parties disagree whether it is appropriate for the Court to resolve the choice-of-law issue at the pleading stage, rather than waiting until the class certification stage when discovery is complete. Alacer argues that courts resolve this issue at the pleading stage unless a plaintiff can "show how discovery may change the outcome." *See* Motion, ECF No. 47 at 3 (citing *Julian v. TTE Tech., Inc.*, No. 20–cv–02857–EMC, 2020 WL 6743912, at *10 (N.D. Cal. Nov. 17, 2020)). In response, Cimoli argues that the Court should wait until class certification to conduct a choice of law analysis. *See* Opposition, ECF No. 54 at 6–7. Cimoli argues that courts routinely wait until class certification to conduct the choice of law analysis, pointing *inter alia* to several occasions on which this Court has deferred its choice of law analysis until the class certification stage. *See id.* (citing *Cullen v. Shutterfly Lifetouch, LLC*, No. 20-cv-06040-BLF, 2021 WL 2000247, at *9 (N.D. Cal. May 19, 2021); *Wallace v. SharkNinja Operating, LLC*, No. 18–cv–05221–BLF, 2020 WL 1139649, at *15 (N.D. Cal. Mar. 9, 2020)). Cimoli further argues that the Court will have a complete factual record at class certification, which will impact the choice of law analysis, including because (1) it will likely reveal more contacts between Alacer and Pennsylvania and (2) it may impact the materiality of any differences between California and Pennsylvania law. *See* Opposition, ECF No. 54 at 6–11. On reply, Alacer argues that (1) Cimoli fails to show how discovery could change the choice-of-law analysis in this case and (2) resolving the choice-of-law issue now would limit costly nationwide class discovery, so strong policy considerations favor this approach. *See* Reply, ECF No. 57 at 3–6.

The Court agrees with Alacer. Courts generally conduct a choice of law analysis prior to the class certification stage unless plaintiffs show that further discovery is necessary for such an analysis. *See Julian*, 2020 WL 6743912, at *10 (addressing choice of law at pleading stage where "Plaintiffs have failed to show how discovery may change the outcome"); *Frenzel v. AliphCom*, 76 F.Supp.3d 999, 1008 (N.D. Cal. 2014) (declining to defer choice of law analysis until class certification stage where it is "highly unlikely that discovery will uncover information relevant" to the choice of law analysis); *Davison v. Kia Motors Am., Inc.*, No. SACV 15–00239–CJC(RNBx),

2015 WL 3970502, at *2 n.3 (C.D. Cal. June 29, 2015) ("Contrary to Plaintiff's contentions, many courts have decided against deferring the choice of law decision until discovery or class certification where, as here, the material differences are sufficiently obvious from the pleadings."); *Vinci v. Hyundai Motor Amer.*, No. SA CV 17–0997–DOC (KESx), 2018 WL 613828, at *5 (C.D. Cal. Apr. 10, 2018) (collecting cases); *Walters v. Vitamin Shoppe Indus., Inc.*, No. 3:14–cv–1173–PK, 2018 WL 2424132, at *4 (D. Or. May 8, 2018) ("I conclude that this court may rule on the sufficiency of class action allegations at the pleading stage if no issues of fact must be resolved."), *rep. & rec. adopted*, 2018 WL 2418544 (May 29, 2018); *see also Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3674115, at *7 (N.D. Ill. Aug. 1, 2018) ("Although Plaintiffs have not yet filed a motion for class certification, the court need not wait until they do so to strike their class allegations if it thinks that additional discovery would not be useful in resolving the class determination.") (internal quotations omitted). Cimoli has failed to show that discovery is likely to change the outcome here. As the Court outlines below in its choice of law analysis, the Court finds that it is consistent with *Mazza* to conduct the analysis regarding (1) the materiality of differences in California and Pennsylvania law and (2) the predominant interest analysis at this stage of the case. *See Mazza v. Amer. Honda Motor Co., Inc.*, 666 F.3d 581, 593 (9th Cir. 2012). Any further facts regarding Alacer's contacts with Pennsylvania would run headlong into the well-established principle of California choice of law rules that "the place of the wrong has the predominant interest"—*i.e.*, "the state where the last event necessary to make the actor liable occurred." *Id.* (citations omitted). And courts have consistently analyzed whether the differences in states' laws are material before the close of fact discovery. *See, e.g., Frezza v. Google Inc.*, No. 5:12–cv–00237–RMW, 2013 WL 1736788, at *6 (collecting cases).

Cimoli points to two cases in which this Court declined to conduct the choice of law analysis at the pleading stage—*Cullen* and *Wallace*. *See* Opposition, ECF No. 54 at 6–7 (citing Cullen, 2021 WL 2000247, at *9; *Wallace*, 2020 WL 1139649, at *15). In *Cullen*, the Court agreed with Plaintiffs that the choice-of-law analysis was "not appropriate for disposition at this early stage of the case." *Cullen*, 2021 WL 2000247, at *9. But in addition to being at the pleading stage, the Court's finding came in the context of an order less than a year into the case where it dismissed all claims from

1    plaintiffs' original complaint. *See id.* at *10. The present case has been pending nearly a year and
2    a half, with Cimoli's claims having survived an initial motion to dismiss, fact discovery closing in
3    about two months, and a First Amended Complaint filed. *See* Order Revising Scheduling Order,
4    ECF No. 53. This case is much further along than *Cullen* was when the Court issued the order in
5    question in that case. Additionally, in *Wallace*, the Court noted that "a detailed and fact-intensive
6    inquiry" was necessary for the choice of law analysis. *Wallace*, 2020 WL 1139649, at *15. The
7    Court finds that such an analysis is not necessary here, since the outcome of the choice of law
8    analysis is clear and Cimoli has failed to show that further discovery would change that outcome.
9    Accordingly, the Court finds that its prior decisions deferring the choice of law analysis until class
10   certification are not persuasive here.

11   Cimoli also points to several cases in which courts deferred the choice of law analysis until
12   class certification—most of which are out-of-circuit or out-of-district cases. As the Court outlines
13   further in its choice of law analysis below, the Court finds that this is a case similar to the many
14   Northern District of California and Ninth Circuit cases where courts have found the choice of law
15   analysis appropriate to conduct at the pleading stage. *See, e.g.*, *Julian*, 2020 WL 6743912, at *10;
16   *Frezza*, 2013 WL 1736788, at *7; *Vinci*, 2018 WL 6136828, at **9–10; *Potter v. Chevron Prods.
17   Co.*, No. 17–cv–06689–PJH, 2018 WL 4053448, at **10–12 (N.D. Cal. Aug. 24, 2018); *see also
18   Mazza*, 666 F.3d at 591.

19   Accordingly, the Court declines to defer the choice of law analysis until the class
20   certification stage. Instead, the Court finds it appropriate to conduct the choice of law analysis at
21   the pleading stage.

22               b.   General Choice of Law Considerations

23   The parties disagree whether Cimoli can bring claims under California and Pennsylvania
24   consumer protection laws simultaneously under choice of law principles. Alacer argues that Cimoli
25   cannot bring claims under the consumer protection laws of two states at once. *See* Motion,
26   ECF No. 47 at 2–4. Alacer argues that choice of law requires a *choice*—*i.e.*, a determination as to
27   which of multiple states' substantive law applies to a particular plaintiff. *See id.* at 4. Alacer points
28   to the governmental interest test for determining choice of law articulated in *McCann v. Foster*

8

*Wheeler LLC*, which Alacer asserts selects the *single* state with the greater interest in applying its laws to the controversy. *See id.* at 2–3 (citing *McCann*, 48 Cal.4th 68 (2010)). Alacer further cites Judge Chen's order in *Julian v. TTE Technology, Inc.*, where he dismissed the plaintiffs' nationwide class allegations that they sought to bring under the theory that each consumer could bring one claim under the laws of their home jurisdictions and another claim under the laws of California. *See id.* at 3 (citing *Julian*, 2020 WL 6743912, at *10). In response, Cimoli points primarily to Judge Corley's order in *Jou v. Kimberly-Clark Corp.* holding that a plaintiff can bring claims under different states' consumer protection laws at the pleading stage. *See* Opposition, ECF No. 54 at 2–3 (citing *Jou*, No. C–13–03075 JSC, 2013 WL 6491158, at *11 (N.D. Cal. Dec. 10, 2013)). Further, Cimoli points to (1) caselaw indicating that he need only show constitutional or statutory standing under the UTPCPL and (2) Federal Rule of Civil Procedure 8(d), which allows a party to claim inconsistent claims in the alternative. *See id.* at 4–5. On reply, Alacer argues that (1) Judge Corley's order in *Jou* is the "minority view"; (2) Cimoli's Pennsylvania law claim fails on standing grounds as well; and (3) the problem with Cimoli's Pennsylvania law claim is not inconsistency, but failure on its own terms according to choice-of-law principles. *See* ECF No. 57 at 1–3, 5–6.

The Court agrees with Alacer. Choice of law requires determining the *single* state's substantive law that applies to a particular plaintiff's claims. Accordingly, Cimoli cannot bring claims under California and Pennsylvania's unfair competition laws at the same time. This result is consistent with the Pennsylvania Supreme Court's opinion in the *Danganan* case, where it stated that "choice-of-law rules" may limit the extent to which the UTPCPL can apply extraterritorially. *Danganan*, 645 Pa. at 195. Additionally, the Court agrees with Judge Chen's analysis in the *Julian* case: "The very purpose of choice-of-law rules is to pick a jurisdiction whose laws will substantively govern. . . . Plaintiffs have cited no authority authorizing a party to bring, *e.g.*, an unjust enrichment claim under California law and a separate unjust enrichment claim under Georgia law based on the same underlying facts." *Julian*, 2020 WL 6743912, at *10. Cimoli argues that the outcome in *Julian* depended on the plaintiffs' failure "to show how discovery may change the outcome," while Cimoli has shown how discovery is likely to impact the choice of law analysis here. *See* Opposition, ECF No. 54 at 5 (citing *Julian*, 2020 WL 6743912, at *10). Further, Cimoli

1  argues that Judge Chen found that "Plaintiffs have cited no authority" to bring claims under two
2  states' laws, while Cimoli has "provided a number of cases authorizing plaintiffs to bring claims
3  under the consumer protection statutes of" multiple states. *See id.* As outlined below, the Court
4  disagrees with Cimoli on both fronts—he has failed to show how discovery is likely to change the
5  choice of law analysis, and his cases are either inapposite or heavily outweighed by Northern District
6  of California and Ninth Circuit precedent.

7  Cimoli points to Judge Corley's decision in the *Jou* case. *See* Opposition, ECF No. 54 at
8  2–3 (citing *Jou*, 2013 WL 6491158, at *11). In that case, Judge Corley stated that "the Court is
9  aware of no case that holds that an individual plaintiff, under choice of law principles applied on a
10 Rule 12(b)(6) motion, cannot simultaneously, or in the alternative, bring two causes of action under
11 different states' consumer protection statutes." *Jou*, 2013 WL 6491158, at *11. However, Judge
12 Corley also stated that she was "not convinced that [a choice of law analysis] is an appropriate
13 vehicle for dismissing an individual plaintiff's claim," and that "[w]hile a choice of law analysis
14 appears necessary" at the class certification stage, "this case has not yet reached that stage of
15 litigation." *Id.* Accordingly, Judge Corley found that deferring the choice of law analysis until the
16 class certification stage was appropriate. This Court finds that such a deferral of the choice of law
17 analysis is not appropriate in this case. Therefore, Judge Corley's remarks about a plaintiff's ability
18 to "simultaneously, or in the alternative, bring two causes of action under different states' consumer
19 protection statutes" based on "choice of law principles applied on a Rule 12(b)(6) motion" are
20 inapposite to this case. *Id.*

21 Cimoli points to two out-of-circuit cases—the *Muir* and *Langan* cases—in support of his
22 position. *See* Opposition, ECF No. 54 at 3–4 (citing *Muir*, 2018 WL 3647115, at *7; *Langan v.*
23 *Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 91, 93 (2d Cir. 2018)). But these cases pertain to
24 standing—which Alacer does not challenge—rather than choice of law. *See* Reply, ECF No. 57 at
25 5. Cimoli even acknowledges that the *Muir* court deferred assessing the choice of law analysis until
26 the class certification stage, which the Court declines to do here. *See id.* at 3 (citing *Muir*,
27 2018 WL 3647115, at *9). Cimoli's argument about "the connection between Defendant's conduct
28 and Pennsylvania" also misses the mark. *See id.* at 4. The question here is not whether there is

10

constitutional or statutory standing for Cimoli to bring his Pennsylvania claim. The question is whether choice of law principles allow it—which, as the Court finds below, they do not.

Cimoli argues that under Rule 8 of the Federal Rules of Civil Procedure, he can bring two or more claims alternatively, even if they are inconsistent. *See* Opposition, ECF No. 54 at 4–5. But the problem with Cimoli's Pennsylvania unfair competition law claim is not that it is inconsistent with his California unfair competition law claim. Rather, the choice of law analysis indicates that his Pennsylvania law claim is improper. As outlined below, choice of law principles indicate that his unfair competition claim should be brought under California law—not Pennsylvania law. Accordingly, the Court finds that Rule 8 is inapposite.

Based on the above reasoning, the Court finds that under choice of law principles, Cimoli cannot bring California and Pennsylvania unfair competition claims simultaneously. The Court therefore proceeds to conduct a choice of law analysis to determine which state's substantive law should apply.

### 2. Which State's Law Should Be Applied Under Choice-of Law Rules

The parties dispute whether the choice of law analysis indicates that California is proper, or whether it indicates that Pennsylvania law can be applied nationwide. "A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Mazza*, 666 F.3d at 589 (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001)). California courts apply the governmental interest test to determine which state's law applies, which requires a three-step analysis:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not

11

1         applied.

*Mazza*, 666 F.3d at 590 (quoting *McCann*, 48 Cal.4th at 81–82). Under California choice of law rules, the place of the wrong is where the transaction related to the misrepresentation occurred and not where the intention to misrepresent was formed. *See, e.g., Shuman v. SquareTrade Inc.*, No. 20–cv–02725–JCS, 2020 WL 7458001, at *6 (N.D. Cal. Dec. 18, 2020) (collecting cases); *Mazza*, 666 F.3d at 593–94.

        Cimoli and Alacer appear to agree that the governmental interest test applies to the choice of law analysis. However, they disagree on whether the elements of the governmental interest test favor the application of California law for Cimoli's claims, or whether the analysis indicates that Pennsylvania law can be applied nationwide. The Court considers each element of the governmental interest test in turn.

        a.   Material Differences Between California and Pennsylvania Law

        Under the first element of the governmental interest test, courts consider whether any differences in the substantive law of the two jurisdictions are "material, that is, if they make a difference in this litigation." *Mazza*, 666 F.3d at 590.

        Alacer argues the differences in the California consumer protection statutes and the UTPCPL are material. *See* Motion, ECF No. 47 at 5–6. Alacer points to (1) the lack of a scienter requirement under the California consumer protection statutes in contrast to the UTPCPL's requirement that a defendant act with "knowledge or reckless disregard" and (2) the availability of an injunction, restitution, punitive damages, and a minimum of $1,000 in actual damages under the California consumer protection statutes in contrast to minimum actual damages of $100 (which may be trebled) and no injunctive, restitutionary, or punitive relief under the UTPCPL. *See* Motion, ECF No. 47 at 5–6.

        In response, Cimoli argues that Alacer has not demonstrated how its identified differences between California and Pennsylvania law are material to this case. *See* Opposition, ECF No. 54 at 9–10. Cimoli argues that the difference in scienter requirements is not material because if discovery shows that Alacer made the alleged misrepresentations knowingly, then Cimoli can bring claims under the California and the Pennsylvania unfair competition laws. *See id.* at 10. Cimoli

12

points to the *Muir* case, where a district court in the Northern District of Illinois found that differences in state law regarding statutes of limitations, punitive damages, and intent requirements were immaterial where "proposed class members' claims will . . . rise or fall on the question of whether the labeling on the products Plaintiffs[] purchased was, in fact, false or misleading." *See* Opposition, ECF No. 54 at 10–11 (citing *Muir*, 2018 WL3647115, at *8).

On reply, Alacer points to further differences between relevant California and Pennsylvania law, including differing reliance requirements. *See* Reply, ECF No. 57 at 7. Alacer also argues that Cimoli seeks to make the choice of law analysis depend on whether he can ultimately prove his consumer protection claims under both California and Pennsylvania law, which would require all choice of law analysis to take place after a verdict had been reached. *See id.* at 7. And Alacer further argues that since the default rule is to apply California substantive law, if there were no material differences between California and Pennsylvania law as Cimoli argues, then the law of California would apply, and Cimoli's UTPCPL should be dismissed. *See id.* at 6.

The Court agrees with Alacer. Cimoli does not dispute that the California and Pennsylvania consumer protection laws have the differences Alacer points to—he only disputes that these differences are material to this case. Courts have consistently found similar differences in state law to be material. *See Mazza*, 666 F.3d at 591 (finding differences in state law were "not trivial or wholly immaterial" where scienter requirements, reliance requirements, and available remedies differed); *Frezza*, 2013 WL 1736788, at *6 (finding differences in available remedies under different states' consumer protection laws to be material); *Cover v. Windsor Surry Co.*, No. 14–cv–05262–WHO, 2016 WL 520991, at *6 (N.D. Cal. Feb. 10, 2016) (finding, *inter alia*, differences in "the types of damages available" and "reliance requirements" between two states' laws to be material); *Davison*, 2015 WL 3970502, at *2 (finding differences between states' consumer protection laws based on their scienter requirements and other "essential requirements to establish a claim" material); *Mosqueda v. Am. Honda Motor Co.*, 443 F.Supp.3d 1115, 1125 (C.D. Cal. 2020) (finding differences in scienter requirements between states' consumer protection laws material); *see also Clay v. CytoSport, Inc.*, No: 3:15–cv–00165–L–AGS, 2018 WL 4283032, at *15 (S.D. Cal. Sep. 7, 2018) ("The differences among state consumer protection laws, for

example, in the requirement of defendant's intent or knowledge . . . are material."). While Cimoli points to the out-of-circuit *Muir* case in support of the lack of material differences between California and Pennsylvania law, this Court agrees with many Ninth Circuit district courts that *Mazza* counsels otherwise. *See* Opposition, ECF No. 54 at 10 (citing *Muir*, 2018 WL 3647115, at *8).

Cimoli argues that discovery might reveal details that render the differences between California and Pennsylvania law immaterial, citing the *Mazza* court's statement that differences in states' laws are material "if they make a difference in *this litigation*." *Mazza*, 666 F.3d at 590 (emphasis added). *See* Opposition, ECF No. 10. But the *Mazza* court concluded differences in states' laws were material without a detailed account of the facts at issue—simply concluding, for example, that "[i]n cases where a defendant acted without scienter, a scienter requirement will spell the difference between the success and failure of a claim." *See Mazza*, 666 F.3d at 591. Further, courts have consistently declined to wait until the completion of discovery to decide on the materiality of differences between state laws. *See Frezza*, 2013 WL 1736788, at *6 (collecting cases); *Walters*, 2018 WL 2424132, at *4 ("[D]etermining variations in state law presents legal issues that may be resolved without discovery."). Additionally, while Cimoli speculates that discovery could render the difference in scienter requirements immaterial, he fails to provide any argument for how differences in available remedies could be immaterial in this case. *See* Opposition, ECF No. 54 at 9–11; *Frezza*, 2013 WL 1736788, at *6 (finding differences in available remedies to be material at the pleading stage); *Mazza*, 666 F.3d at 591.

Accordingly, the Court finds that Cimoli has failed to adequately demonstrate that the materiality inquiry regarding differences between California and Pennsylvania unfair competition laws favors the application of Pennsylvania law in this case.

> b. Each Jurisdiction's Interest in the Application of its Own Law and Which State's Interest Would Be Most Impaired

Under the second and third elements of the governmental interest test, the court considers the interests of foreign jurisdictions and which state's interest would be "most impaired" by application of another state's substantive law. *Mazza*, 666 F.3d at 591–94. "It is a principle of

14

federalism that 'each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders.'" *Mazza*, 666 F.3d at 591 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003)). Further, California law acknowledges that "a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders[.]" *Id.* at 592 (quoting *McCann*, 48 Cal.4th at 97) (internal quotations omitted). Under California law, the "place of the wrong" is the state where "the last event necessary to make the actor liable occurred." *Id.* at 593 (citing *McCann*, 48 Cal.4th at 94 n.12).

The parties dispute whether this prong of the governmental interest test indicates that application of California law here is proper for Cimoli's claims, or whether it indicates that Cimoli can sue under Pennsylvania law. Alacer argues that California has a significant interest in applying its own law to purchases like Cimoli's made by residents within its own borders, which predominates over Pennsylvania's interest in applying its law in this case. *See* Motion, ECF No. 47 at 6–7. Alacer argues that the present case precisely mirrors the facts in *Mazza*, where the Ninth Circuit found that non-California states' interest in applying their laws over transactions that took place in those states outweighed the interest of California—where the defendant company was based—in applying California law. *See id.* at 7–8. Similarly, Alacer argues that in the present case, California's interest in applying its law to transactions that took place in California outweighs the interest of Pennsylvania—where Alacer is based—in applying Pennsylvania law. *See id.* at 7–8. Further, Alacer argues that the Pennsylvania Supreme Court's *Danganan* decision and its progeny further underlines the applicability of California law, since those decisions acknowledge that choice of law rules can limit the application of the UTPCPL. *See id.* at 8 (citing, *e.g.*, *Danganan*, 645 Pa. at 194–95).

In response, Cimoli argues that Alacer has failed to show that California has an overriding interest in applying its own law in this case. *See* Opposition, ECF No. 54 at 11–13. Citing the interpretation of *Mazza* in the *Clay* case, Cimoli argues that *Mazza* is distinguishable from the present case. *See id.* at 11–13 (citing *Clay*, 2018 WL 4283032, at **14–17). Cimoli argues that *Mazza* applied foreign state false advertising law over California law where the defendant car manufacturer's headquarters and advertising agency were in California because the product at issue

15

1   was cars sold by dealers in foreign states. *See id.* at 12. Therefore, "whether a purchaser was
2   exposed to the allegedly misleading statement depended in large part on whether the ultimate seller
3   chose to present it." *See id.* at 12 (quoting *Clay*, 2018 WL 4283032, at *16). Accordingly, Cimoli
4   argues that the communication of the advertisements in *Mazza* took place in the foreign states, which
5   is why the *Mazza* court applied foreign state law. *See id.* In contrast, Cimoli argues that the
6   allegedly false representations in this case were made on Alacer's product labels—not by ultimate
7   sellers—so the final decisions regarding the labels were made in Pennsylvania, rather than
8   California. *See id.* at 12–13. Further, Cimoli argues that the *Clay* court recognized that states have
9   an interest in regulating the conduct of their corporations, as Pennsylvania does over Alacer. *See*
10  *id.* at 13. Cimoli also points to the *Forcellati* case for the proposition that a party cannot simply use
11  conclusory cites to *Mazza* to prevail on choice of law, as Cimoli argues Alacer attempts to do here.
12  *See id.* at 11–13 (citing *Forcellati v. Hyland's, Inc.*, No. CV 12–1983–GHK (MRWx),
13  2014 WL 1410264, at *3 (C.D. Cal. Apr. 9, 2014)).

14  On reply, Alacer argues that Cimoli and *Clay* rely on a portion of the *Mazza* opinion
15  pertaining to factual predominance—not choice of law. *See* Reply, ECF No. 57 at 8. Further, Alacer
16  argues that *Clay* fundamentally misunderstood *Mazza* by assuming that the alleged misconduct
17  occurs entirely in the state from which an alleged misrepresentation is disseminated—rather than
18  where the communication of the advertisements to the claimants took place, as *Mazza* explicitly
19  considered. *See id.* at 8 (citing *Mazza*, 666 F.3d at 593). Further, Alacer argues that *Forcellati*
20  depended in part on (1) the presumption that California law applies, which Cimoli does not have
21  here in favor of applying Pennsylvania law and (2) two outdated California Appeals Court cases—
22  *Wershba* and *Clothesrigger*—that courts have since declined to follow. *See id.* at 9 (citing *Wershba*
23  *v. Apple Computer, Inc.*, 110 Cal.Rptr.2d 145 (Ct. App. 2001); *Clothesrigger, Inc. v. GTE Corp.*,
24  236 Cal.Rptr. 605 (Ct. App. 1987); *Sandoval v. Pharmacare US, Inc.*, Nos. 15–cv–0738–H–JLB,
25  15–cv–0120–H–JLB, 2016 WL 3554919, at *7 (S.D. Cal. June 10, 2016)).

26  The Court agrees with Alacer. The Court finds that *Mazza* strongly supports Alacer's
27  position here. As in *Mazza*, "the last events necessary for liability as to [Cimoli]—communication
28  of the advertisements . . . and [his] reliance thereon in purchasing [gummies]," took place in

16

California. *See id.* at 594. Accordingly, just as *Mazza* found that the choice of law inquiry indicated that foreign states' law should be applied—since the alleged transactions took place there—the choice of law inquiry here indicates that California law should be applied—since Cimoli allegedly bought the gummies in California. *See* FAC, ECF No. 45 ¶ 16.

In *Mazza*, the Ninth Circuit considered an appeal of a Central District of California court's decision to certify a nationwide class of consumers who purchased or leased Honda's Acura RL vehicles that include a braking system allegedly misrepresented in Honda's advertisements. *See Mazza*, 666 F.3d at 585. Plaintiffs pointed to alleged misrepresentations in product brochures available at dealerships, television commercials, magazine advertisements, intranet videos viewable at Acura dealerships, a publicly available website, an article in the Acura Style magazine sent to Acura dealerships, and the Acura RL owner's manual. *See id.* at 586–87. Plaintiffs brought claims on behalf of a nationwide class under California law, including based on alleged violations of the UCL, the False Advertising Law, and the CLRA, and for unjust enrichment—and the district court certified the class. *See id.* at 587. The Ninth Circuit vacated the district court's class certification order, finding that "the district court abused its discretion in certifying a class under California law that contained class members who purchased or leased their cars in different jurisdictions with materially different consumer protection laws." *Id.* at 590. Under the first prong of the governmental interest test, the Ninth Circuit found that there were material differences between California and other states' consumer protection laws, including differing scienter and reliance requirements and available remedies. *See id.* at 590–91. Under the second prong, the court found that each state "has an interest in balancing the range of products and prices offered to consumers with the legal protections afforded to them." *Id.* at 591–93.

Under the third prong, the *Mazza* court found that foreign states where purchasers bought the Acura RL vehicles would be impaired in their ability to "calibrate liability to foster commerce" if California law were applied to the entire class. *Id.* at 593. The court found that "California recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.'" *Id.* (quoting *Hernandez v. Burger*, 102 Cal.App.3d 795, 802, 162 Cal.Rptr. 564 (1980)). Further, the court observed that "California considers the 'place of the

17

wrong' to be the state where the last event necessary to make the actor liable occurred." *Id.* (quoting *McCann*, 48 Cal.4th at 94 n.12). Since "the last events necessary for liability as to the foreign class members—communication of the advertisements to the claimants and their reliance thereon in purchasing vehicles—took place in the various foreign states, not in California," the court found that the foreign states "have a strong interest in the application of their laws to" the transactions in question. *Id.* at 594. Further, the court found that California's interest in applying its law to residents of foreign states is attenuated, even though it recognized "that California has an interest in regulating those who do business within its state boundaries[.]" *Id.* at 594. Based on this reasoning, the Ninth Circuit found that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594.

In order to work around *Mazza*, Cimoli relies on an interpretation of *Mazza* provided by a Southern District of California court in the *Clay* case to support his position. *See* Opposition, ECF No. 54 at 11–13 (citing *Clay*, 2018 WL 4283032). In *Clay*—a product labeling case where plaintiffs sought to bring nationwide class claims under the California UCL and FAL—the court found that *Mazza* was inapposite because "whether a purchaser was exposed to the allegedly misleading statement depended in large part on whether the ultimate seller chose to present it, for example, when the representations were made in product brochures, Acura Style magazine, video or other presentations, which were available only at dealerships." *Id.* at *16. Accordingly, the *Clay* court concluded that since the alleged misconduct—product labeling—occurred entirely in California, where defendant was incorporated and maintained its principal place of business, *Mazza* failed to apply and the choice of law inquiry favored California law. *See id.* at *17. The Court agrees with Alacer, as well as other courts, that *Clay* misconstrues the holding of *Mazza*. *See Kaupelis v. Harbor Freight Tools USA, Inc.*, No. SACV 1–1203 JVS (DFMx), 2020 WL 5901116, at *13 (C.D. Cal. Sep. 23, 2020) ("[T]he court disagrees with *Clay*'s reading of the law."). The choice of law analysis in *Mazza* makes no mention of the types of advertising Honda engaged in, or whether it was through local dealers or otherwise. *See Mazza*, 666 F.3d at 593–94. Further, the *Clay* court ignores the fact that various types of advertising at issue in *Mazza* were not provided through dealers. *See id.* at 586–87 (describing television commercials, publicly available websites, mass advertising in

18

magazines, and an owner's manual). And *Mazza* states explicitly that the last events necessary for liability as to the foreign class members included "communication of the advertisements to the claimants *and their reliance thereon in purchasing vehicles*[.]" *Id.* at 594 (emphasis added). Further, *Mazza* states that "[t]hese foreign states have a strong interest in the application of their laws to *transactions between their citizens and corporations doing business within their state*." *Id.* (emphasis added). And *Mazza* makes several statements about how "the geographic location of an omission is the place of the transaction where it should have been disclosed" and "the place of the wrong was . . . not the state where the intention to misrepresent was formed or where the misrepresented acts took place." *Id.* at 593. It is difficult to square these statements with *Clay*'s strained interpretation of *Mazza* as depending on local dealer communications with customers. Accordingly, the Court disagrees with *Clay*—*Mazza* supports Alacer's position that the state where transactions occurred has the predominant interest for purposes of the choice of law analysis.

Cimoli also cites to the *Forcellati* case in support of the position that Alacer has failed to show that California's interest would be most impaired here if Pennsylvania's law applied. *See* Opposition, ECF No. 54 at 11–13 (citing *Forcellati*, 2014 WL 1410264). In *Forcellati*, a Central District of California court found that the defendants had failed to meet their burden to show that "foreign law rather than California law, should apply to class claims" because "in a false advertising case the state from which the misrepresentation was disseminated often has the predominant interest." *Forcellati*, 2014 WL 1410264, at *3. But this statement directly contradicts the Ninth Circuit's findings in *Mazza* that the "place of the wrong" is the state where the last event necessary to make the actor liable occurred, and that the place of the wrong is "not the state where the intention to misrepresent was formed or where the misrepresented acts took place." *Mazza*, 666 F.3d at 594. In support of its claim that the state from which the misrepresentation was disseminated often has the predominant interest, the *Forcellati* court also cited to outdated California cases from decades before *Mazza* that unlikely survived *Mazza*'s holding. *See Forcellati*, 2014 WL 1410264, at *3 (citing *Wershba*, 91 Cal.App.4th at 243; *Clothesrigger*, 191 Cal.App.3d at 616); *see also Sandoval*, 2016 WL 3554919, at *7. Accordingly, the Court finds that *Forcellati* fails to move the needle here.

To the extent that Cimoli further argues that California law would not be impaired because

19

he can bring claims under both Pennsylvania and California law simultaneously, the Court disagrees. As the Court outlined above, choice of law principles require a choice between Pennsylvania or California substantive law, and Cimoli fails to point to any authority holding otherwise.

Accordingly, the Court finds that Cimoli has failed to adequately allege that he can bring claims under Pennsylvania substantive law. Rather, the choice of law analysis unequivocally indicates that it is proper to apply California substantive law to his claims. Accordingly, the Court DISMISSES Cimoli's UTPCPL claim. Since the Court finds that amendment would be futile, the dismissal is WITHOUT LEAVE TO AMEND. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### B. Motion to Strike

Alacer moves to strike Cimoli's nationwide class allegations because he cannot state a claim under Pennsylvania law, and his only claim on behalf of the Nationwide Class is under the UTPCPL. *See* Motion, ECF No. 47 at 8–9. Cimoli does not dispute that his only Nationwide Class claim is under Pennsylvania law, although as outlined above, he argues that his Pennsylvania law claim should not be dismissed. *See* Opposition, ECF No. 54.

The Court agrees with Alacer. Since the Court dismisses Cimoli's UTPCPL claim, and since his nationwide class allegations are based exclusively on that claim, the Court STRIKES Cimoli's nationwide class allegations.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Cimoli's UTPCPL claim is DISMISSED WITHOUT LEAVE TO AMEND; and
2. the nationwide class allegations in Cimoli's First Amended Complaint are STRICKEN.

Dated: February 25, 2022

BETH LABSON FREEMAN
United States District Judge